ERIE R. CO. v. SCHOMER.

(Circuit Court of Appeals, Sixth Circuit. July 13, 1909.)

No. 1,935.

1. TRIAL (§ 256*)—INSTRUCTIONS.

Plaintiff, a switchman, having been injured because of an alleged negligent defect in a coal car, the court charged that Rev. St. Ohio, § 3365-21, made proof of an injury to an employé by reason of a defective car, or attachment thereto, prima facie evidence of negligence; there being a statutory presumption, from an injury to an employé due to such defect, that the company had knowledge thereof before and at the time of the injury. The court had previously explained that the statute raised a presumption of negligence from evidence of an injury from a defect, and that it devolved on defendant to introduce proof to remove the effect of the presumption, and also that under such circumstances defendan' would be bound to offer testimony to excuse the presumption of negligence which would arise from that proof to an extent sufficient to remove the effect of such presumption. Held, that there was no affirmative error in such charge, in the absence of a request for more specific instruction as to the degree of proof necessary to counterbalance the presumption.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 628–641; Dec. Dig. § 256.*]

2. MASTER AND SERVANT (§ 293*)—INJURIES TO SERVANT—RAILROADS—DEFECTIVE CARS—INSPECTION—INSTRUCTIONS.

Where a switchman was injured by an alleged defect in a coal car, and there was a statutory presumption of negligence, which the railroad com-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

pany sought to rebut by proof of recent inspection, an instruction that defendant was not a guarantor of the safety of attachments on its cars, and that if the inspection was suitably and properly made, and the defect did not appear, and did not exist at the time, then defendant used ordinary care, but the mere fact that it had suitable inspectors and that 'hey inspected did not of necessity establish that the car was properly inspected, it being for the jury to say whether the presumption that the car was defective at the time of the accident had been removed by evidence of the kind, extent, and time of the inspection, was a sufficient charge on that subject.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1153; Dec. Dig. § 293.*]

**3.** MASTER AND SERVANT (§ 124*)—INJURIES TO SERVANT—RAILROADS—DUTY OF INSPECTION.

A railroad company is bound to exercise ordinary care in inspecting its cars to ascertain the presence of defects dangerous to employés.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 235, 237–240; Dec. Dig. § 124.*]

**4.** MASTER AND SERVANT (§ 185*)—INJURIES TO SERVANT—RAILROADS—INSPECTION—NONDELEGABLE DUTY.

Negligence of a railroad car inspector is the negligence of the railroad company; the duty to inspect being nondelegable.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 409; Dec. Dig. § 185.*]

**5.** MASTER AND SERVANT (§ 286*)—INJURIES TO SERVANT—RAILROADS—INSPECTION—QUESTION FOR JURY.

In an action for injuries to a railroad switchman by an alleged defect in a coal car, whether an inspection of the car prior to the accident, which had not disclosed the defect, had been ordinarily careful, was for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1020; Dec. Dig. § 286.*]

**6.** TRIAL (§ 253*)—INSTRUCTIONS—LIMITATION OF EVIDENCE.

Where, in an action for injuries to a servant by an alleged defect in a coal car, there was other evidence than the testimony of Z. bearing on the sufficiency of a prior inspection in which the defect was not discovered, a request that, if the jury believed Z.'s evidence concerning such inspection, they should return the verdict for the defendant, was properly refused.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 613–623; Dec. Dig. § 253.*]

**7.** MASTER AND SERVANT (§ 289*)—INJURIES TO SERVANT—RAILROADS—CONTRIBUTORY NEGLIGENCE.

Where plaintiff, a switchman, was injured by an alleged defect in a coal car while attempting to cross the front end of the car, on which there was no platform or end sill, to signal the engineer to stop instantly, whether plaintiff was negligent in endeavoring to so cross, instead of adopting some other practical and safe method, was for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1089–1132; Dec. Dig. § 289.*]

**8.** MASTER AND SERVANT (§ 296*)—INJURIES TO SERVANT—ACTION—EMERGENCY—INSTRUCTIONS.

Where, in an action for injuries to a switchman by an alleged defect in a coal car, as he was crossing the front of the car, there was some evidence to show reason for quick action, and also evidence that the way he took was proper, the court properly charged that if plaintiff, apprehending threatened danger, or conceiving necessity for unusually quick action, selected one of two ways that was not as safe as the other, the

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

jury, in determining whether he was negligent, should consider the emergency, if any, and the kind of conduct demanded of plaintiff under the circumstances.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1180–1194; Dec. Dig. § 296.*]

9. MASTER AND SERVANT (§§ 246, 247*)—INJURIES TO SERVANT—CONTRIBUTORY NEGLIGENCE—PROXIMATE CAUSE.

Plaintiff, a switchman, threw the wrong switch, and, seeing the train was about to back on the wrong track, attempted to signal the fireman to stop instantly. Being unable to do so, he attempted to cross the front end of a coal car to the engineer's side to signal him, and in doing so caught hold of a defective tie rod, which he mistook for a grab iron, and was precipitated to the track and injured. *Held*, that plaintiff's mistake in throwing the wrong switch was the remote and not the proximate cause of the injury, and hence such mistake did not deprive him of the right to have his act in crossing the car considered on the question of contributory negligence, with reference to the emergency then existing for immediate action.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 789–800; Dec. Dig. §§ 246, 247.*]

10. EVIDENCE (§ 471*)—CONCLUSIONS.

A statement of a witness, referring to plaintiff at the time of the injury, "I judge he got scared when the trestle got so high as to make him think he might get side-wiped with the trestle," was properly excluded. as an opinion.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2149–2185; Dec. Dig. § 471.*]

11. APPEAL AND ERROR (§ 231*)—RECEPTION OF EVIDENCE—OBJECTIONS.

Objections to evidence, failing to point out the ground of objection, afford no basis for an assignment of error.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 194; Dec. Dig. § 231.*]

In Error to the Circuit Court of the United States for the Northern District of Ohio.

W. E. Cushing, for plaintiff in error.

G. M. Skiles and R. B. Newcomb, for defendant in error.

Before LURTON, SEVERENS, and WARRINGTON, Circuit Judges.

LURTON, Circuit Judge. Action for personal injuries sustained while in the service of the Erie Railroad Company as a yard switchman. Jury, and judgment for plaintiff. There was evidence tending to show that plaintiff was one of a switching crew engaged in the switching of two loaded coal cars from the track upon a coal tipple to an adjacent surface track. It was a dark night. Plaintiff, though an experienced switchman, was not familiar with the tipple or tracks adjacent. He was directed to take two cars down the tipple track, "throw the switch, and put them on the middle rails." He gave the necessary signal for backing, and then mounted on the forward corner step or stirrup on the forward car, on the fireman's side of the engine. What happened, as told by the plaintiff, was as follows:

"(2) Describe what happened. A. As soon as I got on the car was sort of backing up, and as soon as I got on the stirrup I seen I wasn't going up the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

right incline. I was going on what they call the surface track, and tried to swing the fireman down; and the cars didn't slack up, and they didn't seem to take my signal, and I thought maybe the fireman wasn't able to see me, or wasn't there. So I swung around on the ladder end of the car and took hold of the top, or the next to the top, round with my left hand, and put my right foot over on the deadwood, and reached over with my right hand to take hold of the grab iron, and as soon as I did I let go with my left hand and I lost my balance. Something gave way with me, and I fell over backward, and that is the last I remember. Q. Do you remember what gave way? A. I suppose the handhold gave way with me. I don't know; only what I heard since. Q. Where was your lantern? A. On my left arm. Q. Where were you going? A. To the opposite side of the car to swing the engineer down. I knew the engineer would have his head out of the window. Q. Was that the proper way for you to go? (Objected to; overruled; exception.) A. Yes, sir."

Other evidence tended to show that he did not take hold of the grab iron, which was about the center of the end of the car, but of the loose end of an iron tie rod of about the size of the grab iron. This gave way, and he fell between the rails, and in front of the moving car upon which he was standing. It further appeared that inside of such coal cars there is an iron brace rod which runs across the car to support the sides of the car against pressure from the load. One end of this brace rod had broken loose, and the loose end was hanging in looped shape over the end of the car; the loop end forming something of a handle just above the handhold which the plaintiff supposed he had hold of. The negligence of the railroad company was in the presence of this looped broken tie rod, hanging over the end of the car in a situation likely to deceive a brakeman endeavoring to support himself, especially in the dark, upon the grab iron, and so the jury was instructed.

This action was predicated upon section 3365–21, Rev. St. Ohio, which makes proof of an injury to an employé by reason of any defective car or "attachment thereto" prima facie evidence of negligence; there being a statutory presumption from an injury due to such defect to an employé that the company had knowledge before and at the time of the injury. It is not plain just what is deemed the error in the instruction of the court in respect of this statutory presumption of negligence. In the brief, counsel seem to lay stress upon the fact that the court said that, if the jury was satisfied that the accident happened substantially as the plaintiff claimed it did, the defendant was negligent. But this must be taken with its context. The court had before explained that the Ohio statute raised a presumption of negligence from evidence of an injury from a defect, and that it would devolve "upon the defendant to introduce proof to remove the effect of that presumption of negligence arising out of that fact." He also followed the statement particularly complained of by saying:

"Because then we have the case where an accident happened and injury resulted in consequence of a defective attachment of a car operated by the defendant, or of a defect in a car operated by the defendant, and the result would be that the defendant would have to offer testimony to excuse that negligence; that is, that would be the prima facie status of it."

171 F.—51

Further explaining, he added:

"A presumption of negligence would arise from that proof, and it would fall upon the defendant to introduce proof to the contrary, to an extent sufficient to remove the effect of that presumption of negligence arising out of that fact."

In Klunk v. Hocking Valley Railway Company, 74 Ohio St. 125, 77 N. E. 752, it is said, in reference to this Ohio statute:

"But, while the effect of this statute in the cases to which its provisions apply is to so modify the rules of evidence as to make the proof of such defect prima facie evidence of negligence on the part of the corporation, yet this statute neither changes nor affects the rule as to the quantum or degree of evidence.sufficient or necessary to rebut.or control the prima facie case thus raised. The general rule would seem to be well established, by an almost unbroken line of authority, that to rebut and destroy a mere prima facie case the party upon whom rests the burden·of repelling its effect need only to produce such amount or degree of proof as will countervail the presumption arising therefrom. In other words, it is sufficient if the evidence offered for that purpose counterbalance the evidence by which the prima facie case is made out and established. It need not overbalance or outweigh it. Smith v. Sac Co., 11 Wall. 139, 20 L. Ed. 102; Stewart v. Lansing, 104 U. S. 505, 26 L. Ed. 866; Foster v. Hall, 12 Pick. (Mass.) 89, 22 Am. Dec. 400; Railroad Co. v. Brazzil, 72 Tex. 233, 10 S. W. 403."

This court, in Toledo, St. L. & W. R. Co. v. Star Flouring Mills Co., 146 Fed. 953, 77 C. C. A. 203, and Shankweiler v. Baltimore & O. Ry. Co., 148 Fed. 195, 78 C. C. A. 353, accepted this as a proper interpretation of this statute. There was no affirmative error in what the court did say, and, if the plaintiff in error had desired anything more in reference to the degree of proof which would be sufficient to counterbalance the statutory presumption, there should have been a special request upon that matter. No such request was made.

2. The defendant sought to rebut the presumption of negligence by evidence of recent inspection. There was evidence tending to show that this car had been inspected on the day of the accident, and that the inspectors had not discovered this broken tie rod, and that such a condition, if it had existed when the inspection was made, was one of such obvious character that it could not have escaped observation. From this evidence it was claimed that the defective attachment originated after the inspection, and, if so, was so recent as not to constitute evidence of negligence.

The court, in substance, instructed the jury that the defendant was not a guarantor "of the safety of instrumentalities and the attachments upon its cars." "If," said the court, "that inspection was then suitably and properly made, and this defect did not appear, and did not exist at that time, then I charge you that the defendant used ordinary care. But the mere fact that it had suitable inspectors, and that its inspectors inspected, does not carry with it, of necessity, the conclusion that the car was properly inspected. It is for you to say whether or not, upon all of this testimony, the presumption that this car was defective at the time of the accident has been removed by their testimony showing the kind and extent and time of inspection." This was a full, clear, and sufficient charge upon this subject.

Plaintiff in error says that.it was error to charge the jury upon the subject at all, that the evidence showed that there had been a proper

and reasonable inspection upon the very day of the accident, and that the jury should have been instructed to find that the defendant had done its duty in the matter of inspection. We shall pass by the assignments of error based upon what the court said about the duty of inspection. None of these are good, if the question of whether, under the evidence, there had been a proper and careful inspection of this car, was one for the jury.

There was a request that the court should say to the jury that if they believed the evidence of the witness Zelenak, one of the inspectors at the coal tipple track, whose duty it was to inspect this car, they should return a verdict for the defendant. This required the court to eliminate all other evidence, direct and circumstantial, which bore upon the fact of a proper inspection. If, as the court said to the jury, this broken tie bar hung over the end of this car in proximity to the handhold when this inspection was made, it was negligence not to see it. A proper inspection, as the court said in another place, would have disclosed it. One of two things was plain. Either this condition was brought about after the inspection relied upon, or the inspection was carelessly made.

Against the conclusiveness of the evidence of inspection there were these facts: First, that this witness Zelenak said that he was one of two who inspected together, he on one side of a train of cars and his associate on the other. Was the court to assume that what Zelenak saw or ought to have seen upon one side of the train was all there was to see? Second. Neither Zelenak, nor his colleague, have any recollection of the inspection of this particular car. It was in evidence that they inspected each day, between them, a great many cars. In such circumstances it was only possible for them to testify as to their practice of marking a car as in bad order, and reporting every such car in a record kept by them, and that this car was not so reported on the record book. As against the inference, from the failure of the inspectors to discover this broken rod, that the condition was a recent one which occurred after the inspection, there was evidence that the broken end of the tie rod indicated from its appearance an old break.

The rule of ordinary care is applicable to this matter of inspection. That rule does not demand an impracticable inspection, such as would unreasonably cripple or embarrass the usual and customary operation of a railroad, and an inspection such as usually made by well-regulated railroads will be ordinary care. I. C. Rd. Co. v. Coughlin, 132 Fed. 801, 65 C. C. A. 101; Shankweiler v. B. & O. Rd. Co., 148 Fed. 195, 78 C. C. A. 353. But the negligence of an inspector is the negligence of the company, for the duty is one nondelegable. Felton v. Bullard, 94 Fed. 781, 37 C. C. A. 1. Having in mind the great number of cars which the inspectors were required to inspect at this point each day, the fact that the inspectors had no memory as to the inspection of this particular car and could rely only upon their usual course of business, and also the evidence of the witness who examined the brace rod which produced the mischief that the break in the rod was an old one, it was not error to submit the question of the reasonableness of the man-

ner of inspection and carefulness with which it was done to the jury for their opinion. For even a stronger reason it was not error to refuse to put the case to the jury upon the credibility of Zelenak and the sufficiency of his evidence alone.

3. Whether the plaintiff was himself in the exercise of due care in endeavoring, as he did, to cross the front end of a coal car, upon which there was no platform or end sill, was a question for the jury. The second request for a special charge, in substance, asked the court to tell the jury that if the plaintiff had two ways of getting into a position to signal the engineer, one of which was practical and comparatively safe, "and the other to pass over the deadwood of the car to the other side, and that such method was a dangerous one, that the choice of the latter would be negligence, barring a recovery in this case." This was a right principle, but not applicable here in the narrow form stated. It ignored the effect of a situation which might leave no time for a comparison of dangers and a choice of means. It was plainly the duty of the plaintiff to stop the backing of these cars out upon a track not intended for such use. He found, after he mounted the corner step of the forward car upon which he rode down from the tipple track, that he had thrown a switch which led out to a storage track. He could not, owing to a curve, fully observe the condition of that track, and says the cars were being shoved down a track upon which "cars were being placed." Acting upon this thought, he adopted the nearest and apparently quickest way of getting over to the engineer's side to signal a stop. Upon this aspect of the case the court told the jury:

"If you find that the plaintiff, at the moment when he conceived it to be his duty to convey a signal to the engineer to instantly stop, apprehended that there was threatened danger, or conceived a necessity for unusually quick and expeditious action, selected of two ways one that was not as safe as the other, you will consider, in determining whether or not he was at that time exercising ordinary care for his own safety, what was the emergency, if any, that presented itself to him, and what kind of conduct you have to demand of him under those circumstances."

There was no error in this, for there was evidence tending to show a reason for quick action, as well as some evidence that the way he went was a proper way. But it is urged that, as the mistake made was plaintiff's mistake in throwing the wrong switch, he is not entitled to the benefit of any emergency claim. The mistake was not a culpable one. There was evidence tending to show that this was the first time he had ever done switching work at or near this coal tipple. But that mistake was the remote and not the proximate cause of the injury. The defective attachment was the immediate and proximate cause of his hurt. That was sustained in endeavoring to discharge his duty to the company under the immediate conditions, and not in an endeavor to save himself. He was at the time called upon to do something at his post of duty. The rule of care which was applicable to him at that moment was that which makes reasonable allowance for a sudden call for action, not permitting delay or time for making choice of means.

Certain assignments of error are predicated upon evidence excluded or admitted over objection. One relates to the exclusion of certain

parts of an ex parte affidavit made at the instance of an agent of the company getting up such statements shortly after plaintiff's injury. Kieley was a witness for the plaintiff in error, and had been an eye-witness. In this original affidavit it appeared that he had said, re-ferring to the plaintiff at the time he fell:

"That he rode stirrup until he reached the trestle, and, I judge, got scared when trestle got so high as to make him think he might get side-wiped with trestle. He then made a move to corner of car, and his lantern fell, and he was under the car."

The statement, "I judge, got scared," etc., was excluded as a mere opinion. There was no error in this. It was not a statement of fact and the opinion was irrelevant.

The plaintiff was asked if going across the end of the car was the proper way to go. This was objected to. The objection was general, and no reason for the exclusion was given. If the objection had been made to the form of the question, it was good; but in that case it might have been renewed, so as to call for the knowledge of the wit-ness as to the usage or custom. It has been many times decided that objections to evidence which fail to point out the ground of objection afford no basis for the assignment of error in this court. "The ground of the objection," said Judge Day, now Mr. Justice Day, in Merchants' Insurance Co. v. Buckner, 110 Fed. 345, 346, 49 C. C. A. 80, and 81, "should be disclosed, in order that the court may act understandingly and correct the error, if one has been made." See, also, B. & O. Rd. Co. v. Hellenthal, 88 Fed. 116, 31 C. C. A. 414.

In Burton v. Driggs, 20 Wall. 125, 133, 22 L. Ed. 299, it was said:

"It is a rule of law that when a party excepts to the admission of testi-mony he is bound to state his objections specifically, and in a proceeding for error he is confined to the objection taken. If he assigns no ground of ex-ception, the mere objection cannot avail him."

This ruling applies to several of the errors assigned. The other as-signments relating to evidence have been examined. Many of the mat-ters were within the discretion of the judge, and as such show no such abuse as to constitute reversible error.

The errors assigned, and not specifically referred to, have been con-sidered. It would be idle to deal particularly with them. They are all overruled.

The judgment is accordingly affirmed.