## UNITED STATES v. BURCH.

## SAME v. RIDER.

(District Court, N. D. California, First Division.   October 9, 1915.)

### Nos. 5780, 5781.

PROSTITUTION &#9758;1—"INTERSTATE COMMERCE"—SUBJECTS OF REGULATION—
WHITE SLAVE ACT—"INTERSTATE."

Under White Slave Act June 25, 1910, c. 395, 36 Stat. 824 (Comp. St. 1913, §§ 8812–8819), providing by section 1 that the term "interstate commerce," as used therein, should include the transportation from any state or territory, or the District of Columbia, to any other state or territory, and by section 2 that any one knowingly transporting any woman or girl in interstate commerce for the purpose of prostitution or debauchery, or for any other immoral purpose, shall be guilty of a felony, the transportation of a woman from one state to another in an automobile for such purposes is an offense, although the recital in the first section is intended only to declare that the territories and the District of Columbia shall be included in the term "interstate," as well as the various states, yet as "commerce," meaning traffic or intercourse, does not necessarily involve the idea of a common carrier, the declaration of the act that "any person who shall transport any woman in interstate commerce" is equivalent to the declaration that "any person who shall transport any woman from one state to another."

[Ed. Note.—For other cases, see Prostitution, Cent. Dig. §§ 1, 2; Dec. Dig. &#9758;1.

For other definitions, see Words and Phrases, First and Second Series, Commerce; Interstate Commerce.]

William Burch and Charles Rider were each indicted for a violation of the White Slave Act.  Demurrers to indictments overruled, and defendants directed to plead.

John W. Preston, U. S. Atty., and M. A. Thomas, Asst. U. S. Atty., both of San Francisco, Cal.

Paul A. Myers and Lloyd A. Myers, both of San Francisco, Cal., for defendants.

Walter E. Hettman, of San Francisco, Cal., amicus curiæ.

DOOLING, District Judge.   The indictment here is in two counts. The first charges that the defendant knowingly transported in interstate commerce by means of two automobiles running over the public highways of the United States from Wheeling, in the state of West Virginia, to San Francisco, in the state of California, a certain woman for an unlawful purpose, to wit, that she should live and cohabit with him as his mistress and concubine.  The second count alleges transportation by the defendant by the same means and between the same points of the same woman, with the intent in the defendant that the said woman

should engage in the practice of prostitution and give herself up to debauchery. It is not averred in either count that the automobiles were common carriers, and the ownership of such automobiles is alleged to be to the grand jury unknown. One of the automobiles is averred to have been used in transporting the woman from Wheeling to Ft. Bridger, in the state of Wyoming, and the other to have been used for such transportation from Ft. Bridger to San Francisco. It is further averred that the automobiles were run and operated by defendant and one Charles Rider. A demurrer challenges the sufficiency of the indictment; the grounds of the demurrer being that the indictment states no offense. Upon argument it appeared that defendant's contention is that no offense is stated, because there was no element of interstate commerce, as the automobiles are not alleged to have been common carriers.

This case appears to be the first one under the so-called White Slave Traffic Act to present this question. The act provides in its first, section:

"That the term 'interstate commerce,' as used in this act, shall include transportation from any state or territory or the District of Columbia to any other state or territory or the, District of Columbia."

And in its second section it provides:

"That any person who shall knowingly transport or cause to be transported, * * * in interstate * * * commerce, * * * any woman or girl for the purpose of prostitution or debauchery, or for any other immoral purpose, * * * shall be deemed guilty of a felony."

It is argued for the government that the recital in the first section, "that the term 'interstate commerce' shall include transportation from any state or territory or the District of Columbia into any other state or territory or the District of Columbia," is conclusive of the question here, because it is a definition of "interstate commerce," and such definition does not include in any way the element of a common carrier. But I do not think Congress defined or intended to define the term "interstate commerce" in this section, but only to declare that the territories and the District of Columbia should be included in the term "interstate," as well as the various states. We must look elsewhere to determine what is meant by "interstate commerce." It is evident that no transportation, other than a transportation in "interstate commerce," is prohibited by the act quoted, and, indeed, Congress derives its power to enact the legislation in question from that grant of the Constitution which gives it the power to regulate commerce with foreign nations, and among the several states, and with the Indian tribes.

The word "commerce," as used in the Constitution, has never been given any fixed, definite, or circumscribed meaning by the Supreme Court; but it was said in Gibbons v. Ogden, 22 U. S. (9 Wheat.) 189, 6 L. Ed. 23:

"Commerce, undoubtedly, is traffic; but it is something more—it is intercourse."

And the transportation of persons has long been held to be commerce. Interstate commerce then is, among other things, the passage of persons

or property from one state to another. It does not necessarily, or indeed at all, involve the idea of a common carrier, or the payment of freight or fare. Interstate commerce being, therefore, in so far as applicable here, the passage of persons from one state to another, the declaration of the act, "that any person who shall transport any woman in interstate commerce," is equivalent to the declaration "that any person who shall transport any woman from one state to another." It was any transportation from state to state, for the purposes mentioned, that Congress intended to prohibit, and did prohibit, and not such transportation by common carrier alone. In these days it is just as easy to transport a woman or girl by automobile as by rail, and the former method may in many cases be much more expeditious and clandestine than the latter. It is true that the courts will not extend the language of an act so as to embrace cases that do not come within its terms; but, on the other hand, they are not authorized to limit the application of the words used, so as to exclude cases that fall within their ordinary meaning, and are fully within the evil which the act was intended to cure.

The demurrer will therefore be overruled, and defendant will plead to the indictment.