## HART v. UNITED STATES. *

(Circuit Court of Appeals, Ninth Circuit. March 8, 1926.)

No. 4714.

**1. Prostitution ⬅4.**

Evidence of purpose in transporting girl *held* sufficient for jury in trial for violating White Slave Traffic Act June 25, 1910, §§ 2, 3 (Comp. St. §§ 8813, 8814).

**2. Criminal law ⬅113—District Court for Oregon had jurisdiction of prosecution for transporting girl from Oregon to California for immoral purpose (White Slave Traffic Act June 25, 1910, §§ 2, 3, 5 [Comp. St. §§ 8813, 8814, 8816]; Judicial Code, § 42 [Comp. St. § 1024]).**

District Court for Oregon had jurisdiction of prosecution for violating White Slave Traffic Act June 25, 1910, §§ 2, 3 (Comp. St. §§ 8813, 8814), by transporting girl from Oregon to California for immoral purpose, in view of section 5 (Comp. St. § 8816) and Judicial Code, § 42 (Comp. St. § 1024).

**3. Prostitution ⬅1.**

White Slave Traffic Act June 25, 1910, §§ 2, 3 (Comp. St. §§ 8813, 8814), is violated by transportation for immoral purpose, though partly by private automobile.

**4. Prostitution ⬅1—Immoral purpose of girl transported need not be proved, to convict of aiding in procuring railroad ticket for such purpose (White Slave Traffic Act June 25, 1910, §§ 2, 3 [Comp. St. §§ 8813, 8814]).**

Immoral purpose of girl transported need not be proved, to convict of violating White Slave Traffic Act June 25, 1910, §§ 2, 3 (Comp. St. §§ 8813, 8814), by aiding in procuring railroad ticket, on which she traveled, for such purpose.

**5. Prostitution ⬅4.**

Evidence *held* to show purpose to use interstate agency to transport girl in violation of White Slave Traffic Act June 25, 1910, §§ 2, 3 (Comp. St. §§ 8813, 8814).

*Rehearing denied April 19, 1926.

**6. Prostitution ⬡═══4—Evidence held to show purpose to transport girl in foreign commerce to point within court's jurisdiction (White Slave Traffic Act June 25, 1910, §§ 1-3, 5 [Comp. St. §§ 8812-8814, 8816]).**

Evidence *held* to show purpose to transport girl from Canada to Oregon, in violation of White Slave Traffic Act June 25, 1910, §§ 2, 3 (Comp. St. §§ 8813, 8814), so as to give jurisdiction to District Court for Oregon under section 5 (Comp. St. § 8816), in view of section 1 (Comp. St. § 8812), defining foreign commerce.

**7. Criminal law ⬡═══400(10)—Admission of copy of lost letter to defendant, referring to his relations with girl unlawfully transported, held not error (White Slave Traffic Act June 25, 1910, §§ 2, 3 [Comp. St. §§ 8813, 8814]).**

In prosecution for violating White Slave Traffic Act June 25, 1910, §§ 2, 3 (Comp. St. §§ 8813, 8814), admission of paper, identified by witness as copy of lost letter, written by him to defendant in reference to latter's relations with girl transported, in answer to letter introduced by defendant, *held* not error.

**8. Criminal law ⬡═══1043(2)—General objection to admission of testimony, in trial for violating White Slave Traffic Act, as to defendant's statements about another girl than one transported, unavailing on appeal (Act June 25, 1910, §§ 2, 3 [Comp. St. §§ 8813, 8814]).**

In prosecution for violating White Slave Traffic Act June 25, 1910, §§ 2, 3 (Comp. St. §§ 8813, 8814), objection to admission of testimony as to what defendant said about another girl than one transported *held* unavailing on appeal, as not indicating specific grounds therefor.

**9. Prostitution ⬡═══4—Evidence of defendant's relations with his wife at time of promising to marry girl transported after obtaining divorce held irrelevant (White Slave Traffic Act June 25, 1910, §§ 2, 3 [Comp. St. §§ 8813, 8814]).**

In prosecution for violating White Slave Traffic Act June 25, 1910, §§ 2, 3 (Comp. St. §§ 8813, 8814), testimony as to defendant's relations with his wife at time of his arrangement to marry girl transported after obtaining divorce, *held* properly excluded as irrelevant, when offered as evidence of good faith.

**10. Criminal law ⬡═══1169(1)—Rebuttal testimony as to defendant's statement of intent to marry another than girl transported, whom he testified he had contemplated marrying, held not prejudicial (White Slave Traffic Act June 25, 1910, §§ 2, 3 [Comp. St. §§ 8813, 8814]).**

In prosecution under White Slave Traffic Act June 25, 1910, §§ 2, 3 (Comp. St. §§ 8813, 8814), for transporting girl, whom defendant testified he had contemplated marrying, testimony in rebuttal that defendant told witness that he intended to marry witness' sister when case was over *held* not prejudicial to defendant.

In Error to the District Court of the United States for the District of Oregon; Robert S. Bean, Judge.

Frank C. Hart was convicted of violating the White Slave Traffic Act, and he brings error. Affirmed.

Martin L. Pipes, Collier, Collier & Bernard, and P. J. Gallagher, all of Portland, Or., for plaintiff in error.

George Neuner, U. S. Atty., and J. O. Stearns, Jr., Asst. U. S. Atty., both of Portland, Or.

Before GILBERT, HUNT, and RUDKIN, Circuit Judges.

HUNT, Circuit Judge. Writ of error to review the conviction of Hart under five counts of an indictment charging violation of the White Slave Traffic Act, approved June 25, 1910 (Comp. St. §§ 8812-8819).

The counts, respectively, charged (1) that about June 10, 1922, Hart transported Bertha Keller from Portland, Or., to San Francisco, Cal., for the purpose of debauchery and other immoral purposes; (2) that about June 30, 1922, Hart procured and obtained, or aided in procuring and obtaining, a certain railroad ticket upon which Bertha Keller traveled from San Francisco to Portland for the purpose of debauchery and other immoral purposes; (3) that about June 30, 1922, Hart persuaded and enticed, and caused to be persuaded and enticed, and aided in inducing and enticing and coercing Bertha Keller to go from San Francisco to Portland for the purpose of debauchery and other immoral purposes; (4) that about November 20, 1923, Hart transported and caused to be transported, and aided and assisted in obtaining transportation for and in transporting in foreign commerce from Vancouver, B. C., to Portland, Or., Bertha Keller for the purpose of debauchery and for other immoral purposes; (5) that about the 15th of June, 1924, Hart transported and caused to be transported, and aided in obtaining transportation for and in transporting in foreign commerce, from Vancouver, B. C., to Portland, Or., Bertha Keller for the purpose of debauchery and for other immoral purposes.

The statute (section 2) under which counts 1 and 2 were drawn, is as follows: "Any person who shall knowingly transport or cause to be transported, or aids or assists in obtaining transportation for, or in transporting, in interstate or foreign commerce * * * any woman or girl for the purpose of prostitution or debauchery, or for any other immoral purpose; or with the intent and purpose to induce, entice, or compel such woman or girl to become a prostitute or to give herself up to debauchery, or to engage

in any other immoral practice; or who shall knowingly procure or obtain, or cause to be procured or obtained, or aid or assist in procuring. or obtaining, any ticket or tickets * * * to be used by any woman or girl in interstate or foreign commerce * * * in going to any place for the purpose of prostitution or debauchery, or for any other immoral purpose; or with the intent or purpose on the part of such person to induce, entice, or compel her to give herself up to the practice of prostitution, or to give herself up to debauchery, or any other immoral practice, whereby any such woman or girl shall be transported in interstate or foreign commerce, * * * shall be deemed guilty of a felony. * * * " 36 Stat. 826.

Count 3 was drawn under section 3 of the statute, which provides that any person who shall knowingly persuade, entice or induce, or coerce any woman or girl to go from one place to another in interstate or foreign commerce for the purpose of prostitution or debauchery or for any other immoral purpose, or with the intent or purpose on the part of such person that such woman or girl shall engage in the practice of prostitution or debauchery or other immoral practice, whether with or without her consent, and who shall thereby knowingly cause or assist in causing such woman or girl to be carried or transported as a passenger upon the route of a common carrier in interstate or foreign commerce, shall be deemed guilty of a felony. Count 4 is drawn under the same provision of the statute as count 1, except that the charge is that the transportation was in foreign instead of interstate commerce. Count 5 is identical with count 4, except as to the time when the trip described in count four was taken. Section 5 of the act provides that any violation of sections 2, 3, and 4 shall be prosecuted in any court having jurisdiction of crimes within the district within which such violation was committed, or from, through, or into which any such woman or girl may have been transported as a passenger in interstate or foreign commerce, contrary to the provisions of any of said sections. 36 Stat. 826.

[1] It is said that the court erred in overruling a motion to instruct the jury to return a verdict of not guilty as to count 1, for the reason that there was not sufficient evidence that the purpose of Hart in transporting the girl from Portland to San Francisco was· for debauchery or other immoral purposes. The evidence of the prosecution discloses these facts:

In February, 1922, Hart, a married man and a practicing physician in Portland, professionally attended Bertha Keller, then 18 years old. There soon developed a friendly relationship between them, and they went riding together on several occasions. Some months prior to June, 1922, Hart took the girl in his automobile to the outskirts of Portland and there criminally assaulted her, telling her that he was married, but that he was in love with her, and would get a divorce and marry her. Thereafter, from time to time, the illicit relations continued, and in June, 1922, the girl and her sister, who were thinking of going to California, accepted Hart's invitation to go with him. He told them it would not cost them any money. At Hart's request, before leaving Portland, each of the girls signed an affidavit stating that she was desirous of taking a trip to California, and had sufficient means to pay her own expenses, and intended to pay them. The party of three left Portland in Hart's automobile, and drove from Portland to Ashland, Or., where, by Hart's direction, and with money furnished by him, Bertha's sister purchased railroad tickets for herself and Bertha from Ashland, Or., to Hornbrook, Cal., a station just south of the state line between Oregon and California. Before the girls left Hart's car at Ashland, he told them to take all of their belongings. They did so, and took the train for Hornbrook. Hart drove in his automobile, and at Hornbrook met the girls, and the three resumed the journey to San Francisco in Hart's car. After leaving Hornbrook, and during the trip down, Hart continued to have illicit relations with Bertha.

Considering the series of acts and circumstances, there was ample ground for the conclusion that before the journey commenced Hart deliberately formed the purpose of taking Bertha from Oregon to California, and carried out that purpose, in order that he might continue his immoral relationship with her.

[2] This view of the evidence leads to the disposition of the question of the jurisdiction of the United States District Court in Oregon. The language of section 5 authorizes prosecution in the court having jurisdiction of crimes within the district in which the violation was committed, or from, through, or into which any such girl may have been carried or transported as a passenger in interstate or foreign commerce. Yeates v. United States, 254 F. 60, 165 C. C. A. 470, certiorari denied, 39 S. Ct. 136, 248 U. S. 583, 63 L. Ed. 432. The crime was a

continuing one, with acts in two jurisdictions; hence the offense was cognizable in either district. 16 C. J. 199; United States v. Lombardo, 36 S. Ct. 508, 241 U. S. 73, 60 L. Ed. 897; section 42, Judicial Code (Comp. St. § 1024).

[3] There is no special importance in the fact that the transportation for the immoral purpose was partly by private automobile and partly by train. In Wilson v. United States, 34 S. Ct. 347, 232 U. S. 570, 58 L. Ed. 728, the court said that the prohibition of the statute is not in terms confined to transporation by common carrier, and that such a limitation need not be implied in order to sustain the constitutionality of the law, and in United States v. Burch (D. C.) 226 F. 974, the court sustained an indictment, although it did not aver that the automobile used in transporting the woman from one state to another was a common carrier.

[4] We cannot agree with the argument in the brief of the plaintiff in error that, in order to convict under count 2, it was necessary to prove an immoral purpose on the part of the girl transported. What her purpose may have been was wholly apart from that of the man. Athanasaw v. United States, 33 S. Ct. 285, 227 U. S. 326, 57 L. Ed. 528, Ann. Cas. 1913E, 911.

[5] The evidence referred to as showing the purposes which defendant had in persuading the girl to make the trip to San Francisco successfully meets the suggestion that there was no purpose to use an interstate agency in accomplishing the unlawful purpose.

[6] Referring to count 4, there was evidence that by Hart's advice the girl went to Canada; that he telegraphed to her to meet him at Vancouver, B. C., and sent money to her in care of a bank at Vancouver. The girl, with her mother, met Hart at Vancouver, and her testimony is that illicit relations between herself and Hart continued. The party in returning entered the United States at Blaine, Wash., stopped at Seattle for a day or two, and drove back to Portland, where relations were continued. It is argued that, if any crime was committed, it was complete in the state of Washington, and that the District Court in Oregon had no jurisdiction. Again the evidence furnishes an answer, for it clearly appeared that Hart's purpose was to transport the girl from Canada to Portland for immoral purposes.

Count 5, though generally like count 4, has reference to a trip from Seattle to Vancouver, B. C., and return. It appears that the girl went from Portland to Seattle about June 1, 1924. Hart traced her to Seattle, and soon thereafter he and another man and another woman and Bertha left Seattle for Vancouver in Hart's automobile. Hart and Bertha continued their illicit relations. After a few days at Vancouver, the party returned to Portland, arriving there June 15, 1924. Upon arrival, Hart took the girl to a hotel, and thereafter sent her to the seaside. It seems clear that the statutory offense was complete in Oregon, rather than in Washington, where the international border line was crossed. The act itself (section 1) provides that foreign commerce, as those words are used in the act, includes transportation from any foreign country to any state or territory or the District of Columbia.

[7] Error is assigned upon the admission in evidence of a copy of a letter, referring to Hart's relations with the girl, written in September, 1924, to Hart by one Schaeffer. The testimony was that the original could not be found, but, as Schaeffer identified the copy as one of a letter he wrote and testified that it was in answer to a letter introduced by Hart, there was no error in admitting it.

[8] A woman who had been in the party on the trip from Vancouver to Portland, after testifying to the effect that Hart and Bertha had had improper relations while they were on the trip, testified that when they reached Portland they drove by the house of one Birdie Van Woert. Government counsel asked what Hart said about Birdie Van Woert. Witness replied: "He said: 'I am taking you around to show you.'" Counsel for the defendant said: "I object to that." The court ruled that the witness could testify as to what had occurred, as the entire transaction was competent. Defendant saved an exception. Witness then testified that Hart said Birdie Van Woert was his "other" girl; that she had just got over an abortion, and was not very strong; that Bertha then said that Hart had had Birdie for six years, and that no wonder she wasn't very strong, whereupon Hart said, "Well, I only aborted her 20 times." No further objection was made to this testimony, and no request was made to strike out any portion of the answer.

In Noonan v. Caledonia Min. Co., 7 S. Ct. 911, 915, 121 U. S. 393, 400 (30 L. Ed. 1061) the court said: "The rule is universal that, where an objection is so general as not to indicate the specific grounds upon which it is made, it is unavailing on appeal, unless it be of such a character that it could not have been obviated at the trial. The authorities on this point are all one way. Objections to the admission of evidence must be of such a

specific character as to indicate distinctly the grounds upon which the party relies, so as to give the other side full opportunity to obviate them at the time, if under any circumstances that can be done." Erie R. Co. v. Schomer, 171 F. 798, 96 C. C. A. 458; Miller v. United States (C. C. A.) 4 F.(2d) 384.

[9] Mrs. Hart testified in behalf of her husband. The court sustained objection to a question as to what were the relations existing between herself and her husband in 1922. Counsel for defendant stated that, inasmuch as the evidence tended to show that in 1922 Hart made an arrangement with Bertha which contemplated marriage to her, he desired to show that, although Hart was not legally divorced, his relations with Mrs. Hart were such that he could proceed with the understanding that he would be free to marry, and was thus acting in good faith. We agree with the District Court that the question called for matter that was wholly irrelevant.

[10] Error is assigned because the court allowed a witness for the prosecution, Juston Quesenberry, to testify in rebuttal that in March, 1925, at a designated place defendant made the statement that he was in love with the sister of the witness and intended to marry her when the case was over. Inasmuch as Hart testified that he had contemplated marrying Bertha Keller, defendant was not prejudiced by testimony that he made a statement which tended to show that he had no intention of contracting marriage with Bertha.

A careful examination of the whole record convinces us that defendant was not prejudiced in his rights, wherefore he must abide by the judgment against him.

Affirmed.