**Forrest Silva TUCKER, Appellant,**

v.

**UNITED STATES of America,**
Appellee.

No. 15539.

United States Court of Appeals
Ninth Circuit.

Jan. 17, 1958.

Forrest Silva Tucker, in pro. per.

Herbert E. Selwyn, Los Angeles, Cal., for appellant.

Laughlin E. Waters, U. S. Atty., Louis Lee Abbott, Leila F. Bulgrin, Asst. U. S. Attys., Los Angeles, Cal., for appellee.

Before BONE, ORR and CHAMBERS, Circuit Judges.

BONE, Circuit Judge.

Appellant was indicted, tried before a jury and convicted for a violation of Section 751 of Title 18 U.S.C.A. Section 751 reads as follows:

"Whoever escapes or attempts to escape from the custody of the Attorney General or his authorized representative, or from any institution in which he is confined by direction of the Attorney General, or from any custody under or by virtue of any process issued under the laws of the United States by any court, judge, or commissioner, or from the custody of an officer or employee of the United States pursuant to lawful arrest, shall, if the custody or confinement is by virtue of an arrest on a charge of felony, or conviction of any offense, be fined not more than $5,000 or imprisoned not

more than five years, or both; or if the custody or confinement is for extradition or by virtue of an arrest or charge of or for a misdemeanor, and prior to conviction, be fined not more than $1,000 or imprisoned not more than one year, or both. June 25, 1948, c. 645, 62 Stat. 734."

The gravamen of the charge laid in the indictment is that appellant "who was then and there in the custody of the Attorney General of the United States and his authorized representative by reason of the defendant's conviction in the United States District Court of an offense, namely: bank robbery, a felony, did escape and attempt to escape from such custody." The offense in question is charged to have occurred on or about November 5, 1956 in Los Angeles County, California.

Appellant had been taken to Los Angeles, California. At the time of the events here narrated, he was (according to his brief) serving a term of 25 years imprisonment in Alcatraz penitentiary on his conviction of armed robbery, having been committed to that federal penal institution on or about May 20, 1953. His removal to Los Angeles was to secure his testimony in a matter then pending in the United States District Court for the Southern District of California, and his removal was effected under a writ of habeas corpus ad testificandum, the validity and regularity of which are not questioned on this appeal.

The evidence at trial is before us in a lengthy record provided at government expense. The evidence introduced by the government established, or tended to establish, the following facts.

While being held in Los Angeles, appellant was detained in the Los Angeles County Jail. Los Angeles County had a then unexpired and still effective contract with the United States Bureau of Prisons to detain and care for federal prisoners in its County Jail while (as in this case) such a prisoner is being held in Los Angeles.[1]

This contract had been executed by the United States Department of Justice through its Bureau of Prisons (which is a part of the United States Department of Justice) and had been approved by the United States Marshal for the Southern District of California. It had also been adopted by the Board of Supervisors for the County of Los Angeles. Facts in evidence at trial also established that the United States Marshal's Office for the

[1]. This contract was dated July 1, 1955, and was, by its terms, effective for a period not to exceed three years from that date. The events with which we are here concerned all occurred within the effective period of the contract which was entered into between the United States Department of Justice through its Bureau of Prisons, and the County of Los Angeles located in the Federal Judicial District of Southern California. It provides, inter alia, for the safekeeping, care and subsistence of prisoners in the Los Angeles County Jail, Los Angeles, the care to be provided by the County Jail to "include medical, dental and surgical treatment and hospitalization, except for inmates needing hospitalization in Los Angeles County General Hospital." The contract was made subject to the provisions of Title 18 of the United States Code Annotated, and to "the rules and regulations" specified in Exhibit A which was attached to the contract. (These rules and regulations had been promulgated by the United States Department of Justice, and their validity is not assailed on this appeal.)

The aforesaid rules and regulations provided, inter alia, that "it is the responsibility of the Sheriff, jailer, or other official responsible for the administration of the institution [here the Los Angeles County Jail] to keep the prisoners in safe custody * * *." The contract named the Los Angeles County Hospital as the place where "care" (at the expense of the Bureau of prisons) would be provided where medical, dental or surgical treatment and hospitalization was needed or required for a federal prisoner. Provisions were made in the rules and regulations for emergency treatment in the said County Hospital without prior authorization, but the United States Marshal was required to be notified of the conditions calling for emergency treatment. (No issue is presented on this appeal as to the *necessity* for emergency treatment in appellant's illness.)

Southern District of California operates within the United States Department of Justice under the direction and supervision of the Attorney General of the United States.

The evidence also shows that under the said contract, and while acting under such direction and supervision, the said United States Marshal placed appellant in the Los Angeles County Jail. The above mentioned contract, and the attached regulations (see footnote 1) do not provide or require that the United States Marshal or his deputies should be stationed in the County Jail to there personally oversee every or any aspect of appellant's detention since the jail was operated under supervision of the Sheriff of Los Angeles County. Under the contract and attached regulations, it was the responsibility of the said Sheriff to "keep the prisoner in safe custody." And, as indicated in footnote 1, the said contract (and attached regulations) with Los Angeles County provides for medical care.

While being held in the Los Angeles County Jail, appellant complained of and suffered from a painful physical ailment and made several visits to the so-called "Jail Hospital" located in the jail itself. Because of the apparently serious character of appellant's physical trouble, the jail doctor directed that appellant be sent to the Los Angeles County General Hospital for further study in regard to possible prostatitus or uretal calculus. This procedure was in accord with the terms of the contract. (In this connection the evidence shows that the Los Angeles County "Jail Hospital" could provide only *minor* medical attention for jail inmates.) Based upon this advice and directive from the jail doctor, appellant was taken by Los Angeles County Deputy Sheriffs to the Los Angeles County General Hospital on November 4, 1956, for an examination. (He had also been taken to this hospital on previous occasions for a physical examination.)

Evidence established that while the Los Angeles County Jail was under the general control of the County Sheriff, one of his deputies was charged with the supervision of personnel and of the operation of this jail.

Facts in evidence show that when (as here) it is necessary that a federal prisoner held in the County Jail be removed to the Los Angeles County General Hospital for examination and/or treatment, such a prisoner is there lodged in what is designated as the "Los Angeles County Jail Unit" in the said hospital. This "unit" was and is a place of imprisonment in the hospital, that is to say, a "lock-up" or "prison ward" in an area on the 13th floor of the hospital building. Like the regular county jail this "unit" has sleeping facilities but apparently is not equipped with such highly technical facilities as x-ray equipment.

The evidence also established that the Los Angeles County Board of Supervisors had, by formal ordinance, designated that a portion of the Los Angeles County Hospital "is considered a portion of the Los Angeles County Jail." The "portion" on the 13th floor, so made a Los Angeles County Jail Unit by ordinance, is the County Jail facility provided for federal prisoners just above mentioned.

The evidence in this case establishes beyond a shadow of doubt that appellant not only claimed that he was, but actually was, for several days, plagued by certain symptoms which clearly indicated that he might be, or probably was, suffering from a dangerous physical ailment. It was this serious condition that caused his removal to the County General Hospital so that he would be in an institution where facilities for proper emergency medical and x-ray examination were available and close at hand. In the absence of the technical service there available appellant might have died or suffered irreparable harm.

On the morning of November 5, 1956, while appellant was in bed in the "Jail Unit" of the Los Angeles County General Hospital, he was given certain preliminary medication to prepare him for a required x-ray examination in the "Cystoscopic Clinic" of the hospital which was

located on the 4th floor. For this purpose it was necessary to take appellant to said "clinic" where an examination would or might reveal the exact nature of his physical disorder. To remove him to this "clinic," a county-employed hospital orderly placed him on a conventional hospital "stretcher." He was then wearing an ordinary hospital gown and his trousers. The orderly had been assigned for duty in the "Jail Unit" or portion of the hospital.

The orderly "wheeled" the stretcher over to an elevator door located just in front of the "Jail Unit" where a deputy sheriff of Los Angeles County handcuffed him. The stretcher was then rolled into the elevator by the orderly and the elevator lowered to the "clinic" (4th) floor. Later on that floor, and while the stretcher was being pushed down a hall toward the "clinic" door, appellant abruptly jumped from the stretcher and ran down a nearby hallway toward a stairway. The orderly gave chase, grabbed appellant, and a scuffle ensued between the two men on the stairway. Appellant forcibly broke away from the orderly and from all other pursuers and finally managed to run out of the hospital building into the street. He there took possession of a nearby car in which the owner had left ignition keys, and drove off. He was later captured by state officers on the same day a few miles south of Bakersfield, California, while driving north in the stolen car. When seized by these state officers he was still wearing his handcuffs.

### Appellant's Contentions

Appellant raises no question here concerning the validity of his "custody" in the County Jail or while in the County "Jail Unit" in the hospital. Nor does he object to the rulings of the trial court on questions of admissibility of evidence at trial, or any of the court's instructions to the jury. He assures us that his *sole ground* for appeal is that there was insufficient evidence to prove beyond a reasonable doubt that, at the time of the alleged escape (on the 4th floor) he was "in the custody of the Attorney General of the United States or his authorized representative."

In support of this single contention, his argument is two-pronged: The facts in evidence do not (1) sufficiently prove that the Attorney General authorized the Sheriff of Los Angeles County to have custody of appellant, and (2) there was no proof that *the Assistant Director of the Bureau of Prisons* was authorized by the Attorney General of the United States to enter into contracts with state or local agencies pertaining to the care and custody of prisoners. For reasons later noted, we reject argument (1) as wholly without merit. The contract itself is a sufficient refutation of this particular argument.

When the Government rested its prima facie case, appellant's counsel moved for a "dismissal." We assume that he was, by this form of motion, seeking a directed verdict of acquittal. In presenting argument on the motion, counsel urged (1) that appellant was not "in custody" *at the time he left the Los Angeles County General Hospital, this for the reason that the testimony shows that* "this is only *a designated portion* of the hospital, which is the County Jail, which is the 13th floor," and (2) "appellant was not in [such] jail at the time, that he was not in the custody of an authorized representative of the United States Marshal * * * *he was in the custody of an orderly of the hospital, who was not an authorized representative of the Marshal,"* and (3) that "the authority of the Los Angeles County Sheriff to handle prisoners for the United States Marshal is a delegated power and he can't delegate that power to a third person or to a third entity." (Emphasis supplied.) We assume that the reference to a "third person" or "third entity" is a reference to the hospital and to the "orderly."

In answer to a question by the court, appellant's counsel agreed that the Attorney General could delegate the power (of custody) to a non-federal agency such as the Sheriff of Los Angeles County, but that the Sheriff could not

"turn around and delegate that power;" that (appellant's) counsel did not want prisoners having kidney stones operated on by sheriffs, *but* "you might take them over to a deputized office (sic) *and tell the nurse to watch them.*" [2] (Emphasis supplied.)

The court denied appellant's here noted motion.

Subsequently, and at the end of all of the evidence, counsel for appellant again moved for a judgment of acquittal "on the same grounds," i. e., that the defendant "was not in custody" of the Attorney General at the moment he broke away from the clutches of the hospital orderly and ran out of the hospital.

The substance of appellant's argument is that the evidence shows (1) that *during the period* when he was being removed by an orderly *from* the 13th floor hospital "Jail Ward" *to* the "clinic" on the 4th floor, he was not accompanied by a Deputy Sheriff of Los Angeles County (or not being "watched" by a nurse), and (2) this fact indicates that the Attorney General of the United States somehow *lost and/or abandoned* "custody" of him as soon as he was removed from the 13th floor "Jail Ward" on the stretcher. This contention is advanced even though he was then handcuffed and wearing a hospital gown. It is the basis of his claim that the indictment charge lacks support in the evidence.

Appellant's theory of loss or abandonment of "custody" is untenable. In Giles v. United States, 9 Cir., 157 F.2d 588, certiorari denied 331 U.S. 813, 67 S.Ct. 1197, 91 L.Ed. 1832 this Court was confronted with a problem of "custody" which in principle closely parallels that

posed in the instant case. Giles was a prisoner in the federal prison on Alcatraz Island. He was working with other prison inmates *on a dock* on the Island located about 3/8 of a mile from the prison proper. He somehow managed to secrete himself on an Army vessel then "docked" at the Island and was later taken from the vessel and returned to the prison. He was indicted, tried and convicted for attempting to escape *from the custody of the Attorney General.*

Giles argued to us that he was not *in actual custody of anyone* while away from the prison house and while going about the chores assigned to him on this dock, therefore he could not be deemed to have attempted to *escape from custody of the Attorney General.* The specific reason advanced to sustain this argument was that *he was not at all times under the observation of one or the other of the regular Alcatraz prison guards.*

In disposing of this argument, this Court held that it was without force— that the statutory term "custody" as applied to the situation of appellant, is not so narrow and restricted—that appellant likens the case to one *where the custodian of a prisoner purposely abandons his charge, leaving him free to go his own way.* We pointed out that there was *no abandonment of custody* in this instance, and that *the question of custody was submitted to the jury as one of fact* in an instruction stating that, in order to convict, the evidence must show beyond a reasonable doubt that Giles was *actually in custody* at the beginning of the alleged attempt to escape.[3]

In commenting on arguments of counsel in the Giles case, we pointed out that

2. As we noted in the body of the opinion, appellant concedes in his motion for a judgment of acquittal that perhaps if a *deputy sheriff* had asked a *nurse* to watch him during his "emergency hospital treatment," such a "watch" by a nurse might have been sufficient "custody" to satisfy the requirements of the contract with Los Angeles County.

3. Somewhat similar instructions on the issue of "custody" at the time appellant leaped from the hospital stretcher and

broke away from the hospital orderly, were given to the jury in the instant case. Under these instructions, and by its verdict, the jury rejected appellant's theory that he was not in "custody" of the Attorney General at the time and place here mentioned.

We think that on this controlling factual issue the (here unchallenged) instructions were eminently fair to appellant.

"it was not in the circumstances of this case essential to custody that the guard follow the prisoner around and keep him every moment under observation." So much can be said concerning appellant's contentions in the instant case that it was necessary that a Deputy Sheriff of Los Angeles County be in constant watch over him (or at least a nurse be watching him) during his floor-to-floor trip to the hospital "clinic."

Further reiterating the foregoing argument, appellant urges that "it certainly was not in the contemplation of the parties to the contract that a convicted armed robber, sentenced to a term of twenty-five years in a maximum security prison *should be allowed in the civilian portion of a large hospital not accompanied by a guard.*" (Emphasis supplied.) The rationale of the Giles decision (so far as regards "custody") calls for outright rejection and repudiation of the theory that (acting under the provisions of the contract) a prompt and commendable effort of jail authorities to meet a dangerous threat to a prisoner's health by providing necessary emergency treatment in the here hospital clinic (which might save his life) can be tortured into a legal and/or wilful "abandonment of custody" over him. An argument based on this theory is so outlandish as to be void of a semblance of merit or common sense. It is not the policy of the Federal Government to let prisoners die for want of available medical attention.

■ Appellant's final argument is that there was no proof that the Assistant Director of the Bureau of Prisons was authorized by the Attorney General to enter into contracts like the here involved contract with Los Angeles County.

This contract was a public official document and speaks for itself. It reveals on its face that it was signed by the Assistant Director of the Bureau of Prisons "By direction of the Director of the Bureau of Prisons."[4] So far as the evi-

---

4. Title 18 U.S.C.A. Section 4002, in pertinent part, reads as follows: "For the purpose of providing suitable quarters for the safekeeping, care, and subsistence of all persons held under the authority of any enactment of Congress, the Director of the Bureau of Prisons may contract, for a period not exceeding three years, with the proper authorities of any State, Territory, or political subdivision thereof, for the imprisonment, subsistence, care, and proper employment of such persons." The authority given the Director of the Bureau of Prisons under the language of the foregoing statutory provision, underlies the contract with Los Angeles County with which we are here concerned.

Title 18 U.S.C.A. Section 4042 provides, in pertinent part, that "The Bureau of Prisons, under the direction of the Attorney General, shall * * * (2) provide * * * *for the safekeeping, care, and subsistence of all persons * * * convicted of offenses against the United States, or held as witnesses, or otherwise"*; (Emphasis supplied.)

Title 18 U.S.C.A. Sections 4002 and 4012(2) clearly show that the Bureau of Prisons is the actual contracting agency of the Department of Justice *for all matters* pertaining to the care and custody of federal prisoners on behalf of the Attorney General.

As bearing on the issues in the instant case, the following cases are of interest.

In Williams v. Steele, 8 Cir., 194 F.2d 32, 34, the lower court's judgment there considered, was based on 18 U.S.C.A. Section 4042. A question before the Circuit Court in this habeas corpus case was whether Section 4042, supra, entrusting the supervision of discipline in federal prisons under the direction of the Attorney General, is exclusive. The opinion, following the overwhelming weight of authority, held that such authority *was exclusive.* The Circuit Court expressly held that "since the prison system of the United States is entrusted to the Bureau of Prisons under the direction of the Attorney General, 18 U.S.C.A. § 4042, supra, the courts have no power to supervise the discipline of the prisoners nor to interfere with their discipline, but only on *habeas corpus* to deliver from prison those who are illegally detained. (Citing cases.)" A petition for rehearing was denied 8 Cir., 194 F.2d 917, and certiorari was denied 344 U.S. 822, 73 S.Ct. 20, 97 L.Ed. 640.

The conclusion reached in Henson v. Welch, 4 Cir., 199 F.2d 367, is in full accord with the holding in Williams v.

dence shows, the Bureau of Prisons was operating under, and recognizing, the contract at all times here pertinent, and was paying to Los Angeles County all amounts due that county for appellant's "keep" in the Jail and the amounts due for the treatment given him in the hospital "clinic." Furthermore, the record shows that appellant offered no objection when the contract was placed in evidence, and no instruction was requested concerning its validity or the mode and manner of its execution. Nor was the obvious fact that the Bureau of Prisons and Los Angeles County were, at all times here pertinent, recognizing and operating under the provisions of this contract, brought into question at trial.

The rule has been expressed that the authority to execute such a contract cannot be challenged on appeal if there was a failure to object to its introduction and use as evidence at trial; that such a failure to object constitutes a waiver of the right to object, and admits, among other things, the authority of the person executing the contract.

In Collins v. Streitz, 95 F.2d 430, 436, this Court quoted with approval from Wigmore on Evidence (2nd Edition, section 2132) where the following principle is stated:

> "When the opponent fails to object to the admission of the [executed] document, this is, of course, on general principles * * * a waiver as to the need of any evidence authenticating its genuineness; that this waiver is commonly held to extend to the fact of authority of an agent purporting to sign the document for a principal, but not as to the legal sufficiency of the instrument for any purpose."

Steele, supra. In the Henson decision the court repeated and adopted the statement of law concerning the exclusive su-

In footnote 7 to our Collins opinion, Judge Stephens cites (among other apposite cases) two criminal cases from this Circuit, Wells v. United States, 257 F. 605; Hart v. United States, 11 F.2d 499, certiorari denied, 273 U.S. 694, 47 S.Ct. 92, 71 L.Ed. 844, supporting the doctrine that "In the federal courts no error can be predicated on the admission of evidence unless the objection thereto is specific."

The challenge to the authority of the Director of the Bureau of Prisons to direct the contract to be executed by his deputy, the Assistant Director of the Bureau of Prisons, is rejected. The verdict of the jury was just and proper, and the judgment of the lower court thereon should be and is affirmed.

CHAMBERS, Circuit Judge, (concurring).

In all of the foregoing opinion, I concur. However, I think the fourth alternative under Section 751 (See 18 U.S.C.A. § 751) —" * * * from any custody under or by virtue of any process issued under the laws of the United States by any court, judge, or commissioner * * * "—would have been a sufficient basis for an indictment, rather than the harder ground chosen by the district attorney. It is not the case before us, but assuming there had been no contract with Los Angeles County to hold prisoners for the United States Bureau of Prisons, I am satisfied there would still have been a violation by Tucker of the statute when he took his own leave. I am sure that Judge Bone does not mean to imply that "custody of the Attorney General or his authorized representative" is a necessary prerequisite to a violation, but lest someone think the indictment form here is always required, I add this dictum.

pervisory function of the Federal Bureau of Prisons which we quoted in the foregoing comment on the Williams' decision.