**UNITED STATES of America,
Plaintiff,**

**v.**

**Elroy Eugene PERSON, Defendant.
No. 32842–CD.**

United States District Court
S. D. California,
Central Division.
Nov. 27, 1963.

BYRNE, District Judge.

On August 17, 1959, Elroy Eugene Person, defendant, pleaded guilty to one count of an indictment charging him with violation of 18 U.S.C. § 500, and in September of that year he was sentenced to the custody of the Attorney General pursuant to the terms of the Federal Youth Corrections Act. [18 U.S.C. § 5017(c)]. He was then committed to the Federal Correctional Institution at Lompoc, California.

In December of 1962 defendant was transferred from Lompoc to the Federal Pre-Release Guidance Center, commonly known as the "half-way house", with a parole date effective on May 2, 1963.

The officials of the half-way house obtained an outside job for defendant which he was allowed to go to each day, but he was required to return each night.

On January 11, 1963, the defendant was given a five hour night pass so that he could visit his grandmother. He was unaccompanied by any official or other delegate of the Attorney General when he left, but he was to return at 10:30 P. M. that night. While out on this pass defendant visited a restaurant, started drinking beer, and overstayed his leave. Having overstayed his leave he decided not to go back at all.

He was finally arrested on another charge on May 22, 1963. The United States has now filed an indictment against the defendant charging him with violation of the Federal laws which prohibit escape. [18 U.S.C. § 751].[1]

The only real issue in this case is whether or not the defendant escaped from "custody".

Francis C. Whelan, U. S. Atty., Thomas R. Sheridan, Ass't. U. S. Atty., Chief of Criminal Section, Myron Roschko, Ass't. U. S. Atty., Los Angeles, Cal., for plaintiff.

Jordan A. Dreifus, Los Angeles, Cal., for defendant.

■■ It has been said that the escape section, like other criminal statutes,

1. Title 18, United States Code, section 751, reads:

"Whoever escapes or attempts to escape from the custody of the Attorney General or his authorized representative, or from any institution in which he is confined by direction of the Attorney General, or from any custody under or by virtue of any process issued under the laws of the United States by any court, judge, or commissioner, or from the custody of an officer or employee of the United States pursuant to lawful arrest, shall, if the custody or confinement is by virtue of an arrest on a charge of felony, or conviction of any offense, be fined not more than $5000 or imprisoned not more than five years, or both * * *" [Under 18 U.S.C. § 1 this is a felony.]

should be given a strict construction in favor of the freedom of the citizen. United States v. Brown, 333 U.S. 18, 68 S.Ct. 376, 92 L.Ed. 442 (1947), rehearing denied, 333 U.S. 850, 68 S.Ct. 657, 92 L. Ed. 1132 (1948), and Rutledge v. United States, 146 F.2d 199 (5th Cir. 1944). But that does not mean that it should be given a wooden construction without taking account of the "manifest intent of the lawmakers". Brown, supra, at page 26 of 333 U.S., at page 380 of 68 S. Ct., 92 L.Ed. 442. Thus the old rule of Heydon's Case, 30 Co. 7a, 76 Eng.Rep. 637 (Exchequer 1584) still has force today: discover the mischief for which the law did not provide, and the true reason of the remedy enacted; then, apply the remedy so as to suppress the mischief.

Therefore, the true purpose behind this enactment must be ascertained. The legislative history is not too helpful and the question is made the more difficult by the fact that "custody" is a very elastic concept, which means different things in its many contexts. Thus, it has often been said that a person who is on parole is in custody for many purposes, including the granting of habeas corpus. See e. g., Jones v. Cunningham, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963); Anderson v. Corall, 263 U.S. 193, 44 S.Ct. 43, 68 L.Ed. 247 (1923); Miller v. Taylor, 313 F.2d 21 (10th Cir. 1962); Taylor v. Squier, 142 F.2d 737 (9th Cir.), cert. denied because case moot, 323 U.S. 755, 65 S.Ct. 82, 89 L.Ed. 604 (1944); and Gould v. Taylor, 153 F.Supp. 71 (M. D.Penn.1957). But it has never been held, and it is not now contended, that a parole violator has escaped from custody for purposes of an escape statute.

In 30 C.J.S. Escape § 5a a good general definition of custody, for these purposes, is given:

"Custody consists in keeping the prisoner either in actual confinement or surrounded by physical force sufficient to restrain him from going at large or obtaining more liberty than the law allows."

As will appear below, there has been some expansion of this idea, but the root core still retains the notion of some, however slight, physical detention.

This concept of custody comports nicely with the common law theory. Thus, in Steere v. Field, 22 Fed.Cas. 1210 (D. R.I.1822), the defendant was a sheriff who was charged with allowing a man, who was imprisoned for debt, to escape. The question was whether the man was out of the custody of the sheriff. There was no showing that the man had actually left the place of his imprisonment, but he had the power to do so. Justice Story said, at page 1225 of 22 Fed.Cas.:

"When a prisoner * * * is permitted to act, not merely as a turnkey, but to have the possession and custody of the keys and all the doors, as well when the goaler is abroad as at home; and to perform all the duties of an assistant, without any restraint whatsoever as to his person either by day or by night, he cannot be justly deemed in any proper sense of the law to be in custody * * *. It is not the mere absence of physical restraint that makes it an escape, but it is that combined with the voluntary yielding up the right of future custody, so that there can be no recaption, if the prisoner leaves the limits."

And in United States v. Hoffman, 13 F.2d 269 (N.D.Ill.1925), affirmed, 13 F.2d 278 (7th Cir.), cert. dismissed, 296 U.S. 666, 57 S.Ct. 755 (1926) the defendants had been ordered by the court to hold certain men in custody. They took the men into jail, but allowed them to leave to go to the dentist for all day visits, and, sometimes, to go out at night without guards. The men always returned. Nevertheless, the court felt that it was perfectly obvious that the defendants had let the men leave their custody.

If this is so—if custody involves some aspect of physical restraint—the reason for making it a serious crime—a felony—becomes apparent. Very serious consequences are apt to accompany any attempt of a man to escape from physical custody. The Supreme Court indicated

as much in United States v. Brown, 333 U.S. 18, 68 S.Ct. 376, 92 L.Ed. 442 (1947), rehearing denied, 333 U.S. 850, 68 S.Ct. 657, 92 L.Ed. 1132 (1948), where it said that some of the more serious considerations leading to the adoption of the escape statute were:

"Escapes and attempted escapes from penal institutions or from official custody present a most serious problem of penal discipline. They are often violent, menacing * * * the lives of guards and custodians, and carry in their wake other crimes attendant upon procuring money, weapons and transportation and upon resisting recapture."

This also explains why it is just as much of a felony if a man has only been imprisoned for a misdemeanor; or if he, as it turns out, was imprisoned under invalid and voidable process; or if he has not even been found guilty of a crime but has been arrested and held for an alleged felony, even if the indictment is later quashed or his innocence is proclaimed by a jury. See e. g., Godwin v. United States, 185 F.2d 411 (8th Cir. 1950), rehearing denied, 191 F.2d 932 (8th Cir. 1951); United States v. Jerome, 130 F.2d 514 (2d Cir. 1942), reversed on other grounds, 318 U.S. 101, 63 S.Ct. 483, 87 L.Ed. 640 (1943); and Aderhold v. Soileau, 67 F.2d 259 (5th Cir. 1933). Men so held are apt to be desperate and the crimes which they commit in escaping may well bear no special relationship to the crime or reason for which they are being held. Sometimes guards are murdered or beaten, Shockley v. United States, 166 F.2d 704 (9th Cir.), cert. denied, 334 U.S. 850, 68 S.Ct. 1502, 92 L.Ed. 1773 (1948), or citizens' property is stolen, Tucker v. United States, 251 F.2d 794 (9th Cir. 1958).

The preclusion of these evils and not the punishment of the failure of a physically free man to return to his jailors would seem to be the purpose of section 751. In this respect the status of the defendant was much like that of a parolee. He *did* have to return to the half-way house at 10:30 P.M. But then a parolee may have to live at a certain place, be home at a certain time each night, ask permission to own a car or leave the city, and admit a parole officer into his home at any time. Jones v. Cunningham, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963); and Hyser v. Reed, 115 U.S.App. D.C. 254, 318 F.2d 225 (1963). Really, in terms of the dangers to be precluded by an escape statute both men are in about the same position.

But the Government asserts that the cases which interpret escape statutes have already gone far beyond the bounds of physical custody, and that it would now be an unduly crabbed interpretation to refuse to apply the statute to the defendant. Therefore, I turn to the cases which have applied 18 U.S.C. § 751.

In Johnson v. United States, 313 F.2d 953 (8th Cir. 1963) a prisoner was on the Honor Farm of the United States Penitentiary at Leavenworth and escaped from it. He claimed that because of the nature of the Honor Farm he did not come within section 751. The court characterized this defense as frivolous. There are three factors, however, which make this case a rather poor authority on this point. First, the question of custody had been submitted to a jury and it had found the defendant guilty; second, the court stated absolutely no facts showing the nature of the Honor Farm or the manner in which the defendant escaped; and, finally, the question was not before the court on appeal and the court's comment was the purest kind of dictum.

Two other federal cases are cited as lending support to the government's view, and they will now be discussed.

In Giles v. United States, 157 F.2d 588 (9th Cir. 1946), cert. denied, 331 U.S. 813, 67 S.Ct. 1197, 91 L.Ed. 1832 (1947), defendant was prosecuted under 18 U.S.C. § 753h, which is the predecessor to the present section 751 and precisely the same for our purposes. There the defendant had been sentenced to Alcatraz Penitentiary. On the day of his attempted escape he was not within the prison walls, but was working at a dock

in his prison uniform under the supervision of prison guards. The guards did not have their eyes on the prisoners at every moment, but they *were* there. An army vessel arrived and defendant sneaked aboard from under the dock. He was wearing the uniform of an army sergeant. The prisoners had been counted immediately before the docking and were counted immediately after the vessel left. Thus, the defendant was captured before he debarked. Defendant claimed that he was not in custody because he "was not at all times under the observation of one or the other of the prison guards." The case was submitted to a jury, he was found guilty, and appealed. The court stated at pages 589–590 of 157 F.2d:

> "The argument is without force. The statutory term 'custody,' as applied, certainly, to the situation of appellant, is not so narrow and restricted. * * * As already observed, it was not in the circumstances of this case essential to custody that the guard follow the prisoner around and keep him every moment under observation."

This case is so far from the case at hand that it scarcely requires comment. Here was a man on Alcatraz Island, an island consisting of maybe ten or twelve acres outside of the prison walls. People commonly called it "the rock", and it was thought to be inescapable. The guards took their eyes off the prisoner and he managed to sneak under the dock and get away. Surely, he was sufficiently within "custody" even if physical custody is required. Despite this, one judge thought that even here sufficient "physical custody" had not been shown. He said there was insufficient evidence to show that anyone remained as the physical custodian of the defendant, and that an interpretation of the statute to mean something other than "physical custody" would be absurd.

Another Ninth Circuit case, relied upon by the Government, is: Tucker v. United States, 251 F.2d 794 (9th Cir. 1958). There a man had been brought from Alcatraz to Los Angeles by reason of a writ of habeas corpus ad testificandum. While housed in the county jail, where he was properly in custody, he became seriously ill with what seemed to be kidney stones. He was in great pain. He might have died without medical treatment so he was taken to the jail ward of the Los Angeles County Hospital. While he was in that ward there was no question but what he was in "custody". However, the ward did not have the X-ray facilities which were needed to treat him. To reach the X-ray facilities he had to be taken to another part of the hospital. When he was wheeled out of the prison ward on a stretcher he had been prepared for the X-rays, and was wearing a white hospital gown. Before he left the ward area a deputy sheriff handcuffed him. From then on he was alone with the orderly who was pushing the stretcher. When the opportunity arose he leapt from the stretcher, struggled with the orderly, and after breaking away made good his escape by stealing an automobile. The defendant claimed that he was not in "custody" of the Attorney General because he was not accompanied by a deputy sheriff. He felt that he might have been in custody if a nurse were watching him —but not a mere orderly. The question was submitted to the jury and the defendant was found guilty. On appeal the court relied upon Giles and held that:

> "it was not in the circumstances of this case essential to custody that the guard follow the prisoner around and keep him every moment under observation."

There may be some superficial resemblance between Tucker and the case now before the Court, in that an armed guard was not present when either defendant escaped. But the dissimilarities are even greater. How can the case of a man who is being wheeled along on a stretcher by an orderly of a hospital and who is wearing a white gown and handcuffs be compared to the case of a man who is allowed to go about physically unfettered dressed like any other man?

It is also quite significant that in both Giles and Tucker the court took the trouble to set out a myriad of facts pointing to the control which was being exercised over the person of the defendant. If physical custody were really unimportant such facts would be almost irrelevant.

Thus, no case interpreting 18 U.S.C. § 751; is even close to holding that a person in defendant's position is in custody.

It is true that the Government has cited a few state court cases, but they are not binding on this court. In any event, they are easily disposed of. In one of the cases the statute involved expressly declared that the defendant's acts constituted an escape from custody. Cutter v. Buchanan, 286 S.W.2d 902 (Ky. Ct. of App.1956). In the second case the defendant was free to come and go, much like the defendant in this case. But the court did not discuss the question of custody at all and merely stated it was clear that the defendant was "legally detained or confined" when he escaped. The statute did not read in terms of custody, but, rather, as indicated by the quoted language. State ex rel. Johnson v. Warden of the Maryland Penitentiary, 196 Md. 672, 75 A.2d 843 (1950). Finally, in the third case, People v. Haskins, 177 Cal.App.2d 84, 2 Cal.Rptr. 34 (1960) a prisoner who was on the California work furlough program ran away or, rather, did not return for a few days. There is no question that such prisoners are just as free as the defendant was, when they go to work. The court found that not returning was an escape within the meaning of the California statute, which reads very much like 18 U.S.C. § 751. However, Haskins is inapplicable to the case before the court. In the first place, it seems that the court felt it had a duty to construe the statute rather harshly against the defendant. That is a notion foreign to the Federal Courts. Moreover, in finding that the defendant was in custody the court cited a case involving a parolee. As stated earlier, a parolee is certainly in custody for some purposes, but not for the purpose of an escape statute. It might be added that the California legislature may not have been so sure that men on the work-furlough program were in custody, for before the decision was handed down the legislature amended the code so as to expressly include them.

■ Defendant was not in "custody" within the meaning of 18 U.S.C. § 751 when he failed to return from his authorized excursion into the City of Los Angeles on January 11, 1963, and the court finds him not guilty of a violation of that statute.