STATE of Maine

v.

Clifford L. HOLBROOK.

STATE of Maine

v.

Harold R. MERRITT, Jr.

STATE of Maine

v.

Leon L. WALKER.

Supreme Judicial Court of Maine.

April 8, 1974.

See also Me., 317 A.2d 459.

Galen P. LaGassey, County Atty., Rockland, for plaintiff.

Robert F. Adams, Camden, for Holbrook.

Collins and Crandall by Wayne R. Crandall, Rockland, for Merritt.

Richard L. Clawson, Camden, for Walker.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

WERNICK, Justice.

We consider these three cases together since a single opinion will adequately explain the disposition of each of them.

Each case is before us on Report, under Rule 37A (a) M.R.Crim.P., by a Justice of the Superior Court (Knox County). This Court's decision is sought on various issues of law raised by the motions, respectively, of each defendant that the indictment against him be dismissed.

1.—*The situation in State v. Holbrook (Kno-73-5).*

On February 7, 1973 defendant, Clifford L. Holbrook, was indicted in the Superior Court (Knox County). The indictment identified itself as an "Indictment for Violation of 34 M.R.S.A. § 527 (Escape from Furlough)" and charged:

" . . ., on or about the Nineteenth day of August 1972, at Thomaston, County of Knox and State of Maine, Clifford Leon Holbrook, feloniously did commit a criminal offense, to wit, while undergoing lawful imprisonment at the Maine State Prison, in pursuance of the sentence of William E. McCarthy, Justice of the Sagadahoc Superior Court at Its March Term, 1972 for the offense of Breaking, Entering and Larceny in the Nighttime, for a term of not less than one and one-half years nor more than five years which sentence was then and there in full force and effect, and the said Clifford Leon Holbrook, having on, August 19, 1972 been granted a furlough by one having custody of him, to wit, Robert D. Kennedy, Acting Warden at the Maine State Prison, to depart the prison, on said Maine State Prison Furlough Program, said Furlough to commence August 19, 1972 at 8:30 A.M. at the Maine State Prison in said Thomaston and to terminate at said State Prison in said Thomaston at 8:00 P.M. August 19, 1972, whereupon, he the said Clifford Leon Holbrook did then and there wilfully and unlawfully fail to return to the Maine State Prison and from and out of said Maine State Prison did escape and go at large."

On February 20, 1973 defendant moved to dismiss the indictment. The grounds of

his motion, here relevant, were that the indictment: (1) charges an ". . . offense, if any, . . . not cognizable in the County of Knox" since the "alleged acts and . . . failure to act all occurred in the County of Sagadahoc;" (2) fails adequately to charge an offense against the State of Maine; (3) ". . . is duplicitous" as charging "two separate and distinct offenses in a single count;" and (4) "is misleading and, therefore, invalid" because "it captions the offense as 'Escape from Furlough'."

*2.—The situation in State v. Merritt (Kno–73–6).*

An indictment returned on February 7, 1973 to the Superior Court (Knox County), and containing identifying reference as an "Indictment for Violation of 34 M. R.S.A. § 527 (Escape from Furlough)", accused defendant, Harold R. Merritt, Jr., as follows:

". . ., on or about the Eleventh day of December 1972, at Thomaston, County of Knox and State of Maine, Harold R. Merritt, Jr., feloniously did commit a criminal offense, to wit, while undergoing lawful imprisonment in the Maine State Prison, in pursuance of the Sentence of Harold J. Rubin, Justice of the Cumberland County Superior Court at Its June Term, 1972 for the offense of Larceny for a term of not less than one year nor more than two years which sentence was then and there in full force and effect; and the said Harold R. Merritt, Jr., having on, December 8, 1972 been granted a furlough by one having custody of him, to wit, Garrell S. Mullaney, Warden of the Maine State Prison, said furlough to commence December 8, 1972 at 4:30 P.M. at Maine State Prison in said Thomaston and to terminate at said Maine State Prison on December 10, 1972 at 8:30 P.M., that on December 10, 1972 the said Harold R. Merritt, Jr. was granted an extension of time on his furlough to return to said Maine State Prison to December 11, 1972 at 6:30 A.

M. whereupon, he the said Harold R. Merritt, Jr., did then and there wilfully and unlawfully fail to return to the Maine State Prison, on December 11, 1972 at 6:30 A.M. and from and out of said Maine State Prison did escape and go at large."

On February 20, 1973 defendant, Merritt, moved to dismiss the indictment against him on the same grounds (as here material) set forth in the motion to dismiss filed by defendant, Holbrook, supra.

*3.—The situation in State v. Walker (Kno–73–8).*

Defendant, Leon L. Walker, was indicted on February 7, 1973 in the Superior Court (Knox County). Captioned as being ". . . for Violation of 34 M.R.S.A. § 527 (Escape from Furlough)", the indictment alleged:

". . ., on or about the Twenty-third day of December, 1972 at Thomaston, County of Knox and State of Maine, Leon L. Walker, feloniously did commit a criminal offense, to wit, while undergoing lawful imprisonment at the Maine State Prison in pursuance of a sentence of Charles A. Pomeroy, Justice of the Penobscot County Superior Court at Its October Term, 1968 for the offense of kidnapping for a term of not less than fifteen years nor more than fifty years, which sentence was then and there in full force and effect, whereupon, he, the said Leon L. Walker, while on a 12-hour-furlough escorted rehabilitative trip away from the Maine State Prison authorized by one who had custody of him, to wit, Warden Garrell S. Mullaney, did then and there willfully and unlawfully and feloniously escape from his escort and from and out of said Maine State Prison go at large."

On February 20, 1973 defendant, Walker, filed a motion to dismiss the indictment on grounds that: (1) the statutes ". . . which the defendant is alleged to have violated are so broad, general and

indefinite that they are unconstitutional and void for vagueness" and (2) the indictment is invalid because: (a) its allega-. tions are "so broad, general and indefinite" that it fails to "set forth an offense cognizable under the Laws . . . of Maine"; (b) it fails to allege the location of the alleged offense and, therefore, the facts essential to establish proper venue; (c) it " . . . has not been brought in the proper venue . . ." and (d) it fails to allege that "defendant was furnished with a copy of the regulations applicable to the program which he is alleged to have violated."

4.

In each of the cases our decision is that the indictment sufficiently alleges, without duplicity, a violation of a valid and enforceable criminal statute, 34 M.R.S.A. § 710 ("escape from" the Maine State Prison). The venue of each prosecution in Knox County is thus proper. On this basis, all other claims set forth in the various motions to dismiss become immaterial. Each motion to dismiss must, therefore, be denied.

█ Our basic conclusion, that each indictment sufficiently alleges a violation of 34 M.R.S.A. § 710 (hereinafter Section 710), is derived, initially, from a doctrine already established in this State by the decisions of Boyce v. State, Me., 250 A.2d 200 (1969) and State v. Campbell, Me., 314 A.2d 398 (January 28, 1974). In these cases Section 710 is held to prescribe three essential elements of the criminality of conduct by a defendant: (1) defendant's voluntary departure (2) from lawful detention pursuant to lawful authority, (3) for a criminal offense.

In the instant three cases defendants raise no claim as to the first and third of these elements. Present controversy centers about the second element, the true meaning of the concept of "lawful deten-tion pursuant to lawful authority" as contemplated by Section 710.

In State v. Campbell, supra, in turn relying upon Boyce v. State, supra, it was held that under Section 710

" . . . departure from lawful custody need not be from physical confinement within the walls of . . . [the State Prison] but, . . . may be 'from outside the walls,' . . .." (314 A.2d at p. 404)

In *Campbell* the facts happened to be that defendant had made his voluntary departure from a lawful custody "outside the walls" of the Maine State Prison while he was being "escorted by a prison official."

█ In this respect, among the instant three cases the situation of the defendant, Walker, is the same as that in *Campbell*. Like *Campbell*, the defendant, Walker, is alleged in the indictment against him to have been permissibly outside the State Prison under escort by an official of the prison. State v. Campbell is thus precedentially controlling that the allegations in the indictment against defendant, Walker, adequately allege a crime as constituted by a violation of Section 710.

In the other two indictments against the defendants, Holbrook and Merritt, respectively, there is lacking any allegation that while the defendant was outside the Prison on "furlough", he was being guarded, or escorted, by a prison official. Each indictment describes only the existence of the furlough and the scope of the permission embodied in it as authorizing defendant to be outside the prison walls for a fixed period of time after which defendant was required to resume physical confinement in the Prison. As to defendant, Holbrook, his furlough was

"to commence August 19, 1972 at 8:30 A.M. at the Maine State Prison in . . . Thomaston and to terminate at said State Prison in said Thomaston . . . August 19, 1972, . . . .."

As to the defendant, Merritt, his furlough was

"to commence December 8, 1972 at 4:30 P.M. at Maine State Prison in said Thomaston and to terminate at said Maine State Prison on December 10, 1972 at 8:30 P.M., . . . [but] on December 10, 1972 the said Harold R. Merritt, Jr. was granted an extension of time on his furlough to return to said Maine State Prison . . . December 11, 1972 at 6:30 A.M."

We thus confront in the indictments against Holbrook and Merritt an issue which was not expressly analyzed in State v. Campbell. The question is whether the absence of allegations that Holbrook and Merritt were under some physical restraint attributable to the State Prison while they were outside the prison on "furlough" is a fatal deficiency precluding the applicability of Section 710 to sustain the indictments.

Although in State v. Campbell, as already noted, it was a fact that defendant was subject to the physical restraint of a Prison guard, or escort, while he was outside the physical confines of the Prison, this seems to have been merely an adventitious fact of the case and not an essential factor in the Court's reasoning. The State v. Campbell analysis rests, fundamentally, on the rationale previously advanced in Boyce v. State. In *Boyce* the indictment had alleged only that defendant was outside the walls of the institution (to which the Court had committed him) acting as a member of a "supervised work crew." The opinion in the case offers no additional clarification as to whether the "supervision" was in the form of an actual physical control being exerted over defendant's person by an official of the institution or whether the "supervision" related only to the nature of the work being done and was by someone acting merely as a foreman of the work. Apparently, in *Boyce* there was no need that the opinion go into further detail on this point since the analysis in

*Boyce* concentrates on clarifying that the various Maine statutes which outlaw "escape from" particular penal or correctional institutions are, fundamentally, codifications of the common law. Boyce v. State holds that, according to the common law, as statutorily embodied,

"a prisoner who escapes while employed outside the walls of the institution of confinement is considered to have escaped from the institution." (250 A.2d at p. 202)

Accordingly, under the *Boyce* approach the critical factor in "escape" is defendant's voluntary departure from an underlying and continuing *"legal"* custody by the institution of commitment of the person of the defendant—it being unessential whether at the particular moment of defendant's departure such "legal custody" is being objectively manifested in fact by a physical restraint of defendant's person.

State v. Campbell reaffirmed this basic rationale of Boyce v. State and, therefore, in its analysis attached no special significance to the fact, which happened to exist in the case, that the legal custody of the institution to which defendant had been committed was objectively manifested by a continuous assertion of physical restraint over defendant's person. The essential part of the decision in State v. Campbell was phrased in language making no explicit reference to the existence of such physical restraint of the defendant. It was stated to be only:

"it is immaterial that at the time of the escape the inmate was engaged in an authorized, . . . activity requiring his absence from the physical confines of the institution . . . his escape was from the Maine State Prison [as the institution] to which he had been committed by the Court." (314 A.2d at p. 403)

From both Boyce v. State and State v. Campbell there thus emerges the legal principle that if the underlying *legal* custody of a correctional or penal institu-

tion over an inmate or a prisoner should take the objective form that the inmate or prisoner is allowed outside the institution's walls under a grant of permission containing from the outset a concomitant, and thus antecedently operative, mandate that solely upon the expiration of a preestablished period of time the physical restraint of the institution must recur, it is legally immaterial for the purposes of Section 710 (or of Section 807 or Section 859 of 34 M.R.S.A. depending on the particular institution involved) that the institution had failed to maintain a continuous physical restraint of the inmate or prisoner.

This point is more cogently, and concretely, developed by a consideration of the case of United States v. Person, 223 F. Supp. 982 (D.C.1963), a case on which defendants heavily rely.

In *Person* the Court's analysis rested on the premise (with which we agree) that

"it has never been held, . . ., that a parole violator has escaped from custody for purposes of an escape statute." (p. 984)

From this premise the Court in *Person* then proceeded to draw the further conclusion that defendant who had been permitted to be outside the physical confines of the institution to which he had been lawfully committed without having his freedom of motion subjected to some physical restraint, however slight, is "in terms of the dangers to be precluded by an escape statute", "in about the same position" as a "parolee" (p. 985) and, therefore, like a "parolee", cannot be held to have "escaped from custody" within the meaning of an ordinary "escape" statute.

With this ultimate conclusion we strongly disagree. In our view, prisoners like the defendant in *Person,* or the instant defendants, Holbrook and Merritt, have a status significantly different from that of a "parolee."

The critical distinction is that notwithstanding they were allowed outside the walls of the institutions to which they had been lawfully committed without being subject to a continuous physical restraint attributable to the institution, they remained under an antecedently imposed and operative requirement, conditioned only upon the expiration of a period of time, to resume subjection to the physically detentive control of the institution.

By contrast, the essence of a "parolee's" status is that the authority granted him to be outside the institution's walls and free of physical restraint is avowedly calculated from the outset as designed to continue until he receives his final discharge. It contains, internally, no condition precedent operative merely upon the expiration of a period of time by which, without more, the institution's physical restraint upon the "parolee" is reimposed. A "parolee" becomes subject to a resumed physical restraint by the institution only if he engages in some subsequently supervening and new conduct as the result of which specified authorities will enter to take new affirmative action to revoke the parole and thus reimpose the physical restraint of the institution upon the defendant. 34 M.R.S.A. § 1675 et seq.; see, Mottram v. State, Me., 232 A.2d 809 (1967).

■ Since the grant of "furlough" permission to each defendant, Holbrook and Merritt, from its inception and in terms commanded that solely upon the expiration of a pre-designated period of time, and without necessity that defendant engage in some subsequently supervening new conduct, each defendant was to resume physical confinement in the Prison, such type of continuing linkage between the Prison's underlying continuous legal custody and a physical restraint of the person of the defendant is "lawful detention" within the scope of Section 710. Defendant's voluntary "departure" from that "lawful detention" can, in legal contemplation, constitute

an "escape from" the Maine State Prison within the meaning of Section 710.

The indictment against each defendant, Holbrook and Merritt, respectively, sufficiently charges a violation of Section 710. Cf.: Read v. United States, 361 F.2d 830 (10th Cir. 1966); Frazier v. United States, 119 U.S.App.D.C. 246, 339 F.2d 745 (1964); People v. Labrum, 25 Cal.App.3d 105, 101 Cal.Rptr. 602 (1972); People v. Owens, 236 Cal.App.2d 403, 46 Cal.Rptr. 91 (1965); People v. Smith, 195 Cal.App.2d 789, 16 Cal.Rptr. 111 (1961); and People v. Haskins, 177 Cal.App.2d 84, 2 Cal.Rptr. 34 (1960).

Since the indictment against defendant, Walker, (as squarely controlled by State v. Campbell) and the indictments against the defendants, Holbrook and Merritt, are thus found adequately to allege that each defendant committed a violation of Section 710, the next question to be faced is whether each indictment is duplicitous insofar as in a single count it contains allegations which not only charge a violation of Section 710 but also are explicitly identified as asserting a violation of 34 M.R.S.A. § 527 (hereinafter Section 527).

In State v. Campbell, supra, duplicity was claimed on somewhat similar grounds. Campbell decided that the indictment there before the Court was not duplicitous. Campbell, however, is fairly distinguishable on the duplicity issue. In Campbell the only language appearing in the indictment suggestive of a violation of Section 527 was that defendant "did then and there wilfully and unlawfully fail to return to the Maine State Prison." The indictment made no mention of any furlough, assignment or other rehabilitative program outside the State Prison which could reasona-

bly be conceived to suggest applicability of Section 527. Neither did the Campbell indictment contain an explicit identifying reference to Section 527 as the statute allegedly violated.

Inappropriate here, then, is the technique adopted in Campbell—to assume, arguendo, that Section 527 is an enforceable criminal statute and reach the conclusion that the indictment is nonetheless free of duplicity because of a plain insufficiency of the allegations to bring Section 527 into play. Here, the express references to Section 527 and the extensive allegations of the terms and conditions of the furloughs project the duplicity issue in a posture which requires decision whether Section 527 is an enforceable criminal statute.

We hold that although in Section 527 the Legislature used language of punishment,[1] Section 527 is inadequate to establish a separate and independent substantive crime.

The infirmity in Section 527 is most clearly exposed by comparing it with the other statutes by which the Legislature has succeeded in creating the crime of "escape from" penal or correctional institutions under the control of the Bureau of Corrections, to wit: Sections 710, 807 and 859 of 34 M.R.S.A.

In each of these statutes the Legislature has plainly and unmistakably identified particular conduct of a person who is under the lawful detention of the particular institution involved as being unlawful and punishable. In Section 710 it is the conduct of

"a convict sentenced to the State Prison for life or for a limited term of years or

---

1. The fourth paragraph of 34 M.R.S.A. § 527, as it was in effect at all times herein relevant, read:

"Any inmate or prisoner certified by the head of the institution, having custody of him, to the county attorney for the county in which the violation or escape takes place, to have violated the regulations to which he is subject, or escaped from any program

or assignment outside the institution, shall be prosecuted therefor and upon conviction shall be punished by imprisonment for any term of years, which term of imprisonment shall not begin until expiration of the sentence being served at the time of violation or escape, unless such sentence is otherwise terminated by the State Probation and Parole Board."

transferred thereto from the Men's Correctional Center . . . or committed thereto for safekeeping . . . [who] escapes therefrom, . . ."

which is outlawed. In Section 807 the conduct designated criminal is that of

"[a]ny inmate of the center [Men's Correctional Center] . . . who . . . escapes therefrom . . .."

In Section 859 the conduct constituting the crime is that of

"[a]ny inmate [of the Women's Correctional Center] who escapes from the center . . .."

as well as that of

"[a]ny prisoner [a woman sentenced to the Maine State Prison who is committed to the Women's Correctional Center] who escapes from the center . . .."

In each of the foregoing statutes, having first plainly and expressly delineated the particular conduct of a "convict", "prisoner" or "inmate" of the institution as the subject-matter of unlawfulness and punishment, the Legislature thereupon separately and independently specifies the proper venue for prosecution. The statutory methodology is to combine a venue fixed in terms of the location, county-wise, of the particular institution involved with a directive that the head of the institution give notice to the County Attorney of that County through a certification procedure.

With this legislative approach providing illustrative background, we discern that in Section 527 the Legislature so confusingly intermixed a purported clause to charge the criminality of conduct with a purported clause to fix a venue of prosecution (and part of which is to involve a certification notice to the appropriate County Attorney) that Section 527 cannot—consistently with

common law, or constitutional, standards for an enforceable criminal statute—be held to create a validly subsisting independent crime.

In Section 527 the Legislature failed to establish an adequate charging clause by which criminality would attach to the conduct of a convict, prisoner or inmate of a penal or correctional institution (for adults) under the control of the Bureau of Corrections. The Legislature delineated as the gravamen of criminality that any "inmate or prisoner" is to be prosecuted and convicted for being

". . . *certified* by the head of the institution, having custody of him, . . . *to have violated* the regulations to which he is subject, *or escaped* from any program or assignment outside the institution." (emphasis supplied)

Thus, it is not the conduct of the inmate or prisoner in "violating regulations" or "escaping" but the fact that the "inmate or prisoner" is *"certified"* to have engaged in such conduct which is explicitly made the ground of criminality.

Section 527 is so permeated with this confusion, and so inextricably intertwined are the "charging" and "venue" clauses of the statute, that were this Court to attempt to restructure the statute by rewriting it into a mold which would meet the standards of a valid criminal statute, this Court would be required to transgress the proper bounds for interpretation of the meaning of a statute and enter the realm, forbidden to a Court, of legislating. Such course we must, and will, not pursue.

As here operative,[2] Section 527 can be given effect only as a cautionary reminder by the Legislature that implicitly embodied in Section 710 (as well as Section 807 and Section 859) is a principle—already ex-

2. By P.L.1973, Chapter 381, effective October 3, 1973, the Legislature rewrote the fourth paragraph of 34 M.R.S.A. § 527 to read:
"Any inmate or prisoner who shall escape from any program or assignment outside the institution shall, upon conviction thereof, be punished by imprisonment for any term of years. He shall be prosecuted therefor in the county in which the institution to which he was sentenced is located."

pounded by Boyce v. State, supra (and subsequently reaffirmed in State v. Campbell, supra)—under which "any inmate or prisoner" who voluntarily departs from the legal custody of a particular penal or correctional institution (to which he has been lawfully committed) while he is outside the walls of the institution under a rehabilitative program, assignment or furlough authorized under Section 527, is "departing" from "lawful detention" within the contemplation of Section 710 (or Section 807 or Section 859). Section 527, however, does not itself create any independently existing substantive crime.

■ Because Section 527 fails as an enforceable criminal statute, the instant three indictments withstand the attacks predicated on grounds of duplicity; each alleges a violation only of Section 710.

The three indictments not being duplicitous, the error by which each of them misrefers to the statute violated as being 34 M.R.S.A. § 527 instead of 34 M.R.S.A. § 710 is not fatal. Nothing appears here to suggest that the error in statutory designation had "mislead the defendant to his prejudice." Rule 7(c) M.R.Crim.P.

■ Moreover, by virtue of our decision that the three indictments adequately, and without duplicity, allege violations of Section 710, there is no merit to the claims of the defendants that the venue of prosecution is incorrectly alleged or laid. Under Section 710, Knox County, as the County in which the Maine State Prison is located, is the proper venue.

Finally, our holding that the indictments are sustainable as adequately alleging violations of Section 710 disposes of the other contentions of the defendant, Walker,—

that (1) the indictment against him rests on a statute which is "so broad, general and indefinite" as to be "void for vagueness" and (2) the indictment against him omits to allege that he was furnished a copy of the regulations which he is accused of violating. These claims of defendant, Walker, are predicated on his alternatively indulged hypothesis that the indictment against him asserts a violation of Section 527 rather than Section 710. The hypothesis having been shown to be incorrect, the contentions resting on it likewise fail.

The entries are:

(1) In State of Maine v. Clifford L. Holbrook (Kno–73–5):

It is adjudicated that the motion to dismiss the indictment must be denied.

The case is remanded to the Superior Court for the entry of an order denying the motion to dismiss and for further appropriate proceedings.

(2) In State of Maine v. Harold R. Merritt, Jr., (Kno–73–6):

It is adjudicated that the motion to dismiss the indictment must be denied.

The case is remanded to the Superior Court for the entry of an order denying the motion to dismiss and for further appropriate proceedings.

(3) In State of Maine v. Leon L. Walker (Kno–73–8):

It is adjudicated that the motion to dismiss the indictment must be denied.

The case is remanded to the Superior Court for the entry of an order denying the motion to dismiss and for further appropriate proceedings.

All Justices concurring.