**STATE of Maine**

v.

**Charles Peter DYER.**

Supreme Judicial Court of Maine.

April 6, 1977.

See also, Me., 371 A.2d 1077.

Charles K. Leadbetter, Fernand R. LaRochelle, Asst. Attys. Gen., Augusta, Frank E. Harding, Dist. Atty., Rockland, for plaintiff.

Grossman, Faber & Miller, P.A. by Edward B. Miller, Rockland, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE,* WERNICK, ARCHIBALD and DELAHANTY, JJ.

PER CURIAM.

While serving a sentence at Maine State Prison, the defendant Charles Peter Dyer

* Mr. Justice WEATHERBEE sat at oral argument and participated in conference but died before this opinion was adopted.

failed to return to the prison from a furlough authorized by 34 M.R.S.A. § 527. Dyer was found guilty of escape following a jury-waived trial and from the judgment entered, he has appealed. We deny the appeal.

Alleging trial errors, the appellant postures his claims on appeal as follows:

 I. Denial of motion in arrest of judgment.

 II. Denial of motion for judgment of acquittal.

 III. Denial of the appellant's proffered defense of justification.

## I.

■ In support of his first assignment of error, Dyer argues that the indictment fails to allege the specific reason for the authorized furlough and, on this hypothesis, the indictment is vulnerable to his motion in arrest of judgment pursued in accordance with M.R.Crim.P. 34.[1] In support of this claim, the defendant relies on an excerpt from *State v. Campbell*, Me., 314 A.2d 398 (1974):

> Any indictment for "Escape from Furlough" must minimally aver an appropriate and authorized release from the penal institution for at least one of the statutory purposes and an escape therefrom. Absent such an averment, the indictment would be defective. *Id.* at 403.

The defendant has misjudged the thrust of *Campbell, supra.* There we made clear that we were assuming without deciding that 34 M.R.S.A. § 527 created a substantive criminal offense. As that case was postured, it was unnecessary to decide whether § 527 validly established an offense separate and

distinct from "escape" as embodied in 34 M.R.S.A. § 710.[2] Any doubt on this issue was subjected to a penetrating analysis in the *State v. Holbrook, State v. Merritt, Jr., State v. Walker* trilogy (consolidated for decision in Me., 318 A.2d 62 (1974)). There we held that § 527, as then effective, did not establish a substantive offense[3] and the escapes from furlough were properly indictable under 34 M.R.S.A. § 710 which codified the common law crime of escape. *Holbrook, supra.* Thus, it is unessential to an indictment under § 710 that a reason be alleged for the authorized furlough.

■ This indictment, otherwise unchallenged, properly avers the key elements of the crime by charging that at the time the defendant's "escape" from furlough was effected, the defendant (a) was "undergoing lawful imprisonment" in the Maine State Prison for a criminal offense (uttering a forged instrument); (b) was detained pursuant to lawful authority; (c) had voluntarily departed. *Cf. State v. Heald*, Me., 322 A.2d 68 (1974). It is equally clear that an authorized statutory furlough contemplates lawful detention within the meaning of § 710 when, as here, the defendant's furlough was limited as to time and place and therefore his return to the penal compound upon the expiration of his furlough is made imperative. The indictment is founded, not upon subsequent and supervening conduct on the defendant's part, but rather upon the mere expiration of his predetermined furlough time. *State v. Stewart*, 330 A.2d 800 (1975); *Holbrook, supra; Walker, supra.*

■ Though the *Holbrook, Merritt, Walker* trilogy was decided more than a

---

1. RULE 34. ARREST OF JUDGMENT

 The court on motion of a defendant shall arrest judgment if the indictment, information or complaint on appeal from the District Court does not charge an offense or if the court was without jurisdiction of the offense charged. The motion in arrest of judgment shall be made prior to the entry of judgment or within ten days thereafter or within such further time as the court may fix during the ten-day period.

2. 34 M.R.S.A. § 710 provides in part:

 § 710. . . . . *escape* . . . .

If a convict sentenced to State Prison . . . breaks or *escapes* therefrom . . . . he may be punished by confinement to hard labor for any term of years. (emphasis added).

3. By P.L.1973, Chapter 381, the Legislature amended 34 M.R.S.A. § 527 effective October 3, 1973. The offense with which Dyer is charged occurred on September 27, 1973. Thus, the statutory provision controlling in this instance is identical to that dealt with in *Holbrook, supra.*

year prior to the finding of this indictment through inadvertence or otherwise, the State chose to caption the indictment as an offense under 34 M.R.S.A. § 527. Nevertheless, the mislabeling of the offense as a violation of § 527 rather than § 710 does not render the indictment fatally defective:

> Error in the citation of a statute . . . shall not be grounds for the dismissal of an indictment or information or for the reversal of a conviction if the error or omission did not mislead the defendant to his prejudice. M.R.Crim.P. 7(c).

The faulty statutory reference sows no seed of prejudice upon the defendant. *Stewart, supra; Holbrook, supra.* The motion in arrest of judgment was properly denied after the entry of judgment took place.

## II.

Prior to pronouncing a verdict of guilt, the presiding Justice denied Dyer's motions for judgment of acquittal appropriately claimed under M.R.Crim.P. 29(a). The timely motions preserved defendant's claim on appeal that the verdict is unsupported by the evidence.

■ Our review of the trial court's denial of the motion for judgment of acquittal as renewed at the close of all the evidence requires a determination of the sufficiency of all the evidence to support the defendant's guilt beyond a reasonable doubt. *State v. Mann,* Me., 361 A.2d 897, 906 (1976).

■ In a non-jury case, the test of the sufficiency of the evidence rests upon the determination whether, in view of all the testimony, there was believable evidence from which a single justice, as the factfinder, was warranted in believing beyond a reasonable doubt that the defendant was guilty. *Id.*

■ In support of his claim that a judgment of acquittal should have been granted, the appellant makes a two-pronged assertion that (a) he was inadequately identified, at trial, as the escapee; (b) the evidence was insufficient to prove that Dyer escaped

from custody. The trial Justice heard the testimony of a classification officer at the Maine State Prison, who produced a verified copy of the commitment papers of "Charles Peter Dyer" and a furlough application signed "Charles P. Dyer," that the commitment papers pertained to the defendant whom she identified in court. Her testimony on cross-examination was that she was not personally acquainted with the defendant prior to trial and that she lacked familiarity with his handwriting sufficient to recognize his signature. The classification officer did not, however, testify that she was unable to recognize Dyer as an inmate of the Maine State Prison.

Additionally, the presiding Justice had before him evidence of identification of defendant as an inmate at the Maine State Prison which, though largely circumstantial, was nevertheless compelling. The State offered testimony of various witnesses who were personally acquainted with Dyer. One such witness was the defendant's escort on his authorized furlough to 16 Pleasant Street, Rockland. The appellant was further identified, by another official, as a prison inmate who was granted furlough on September 27, 1973. Still another official identified the defendant as a person who voluntarily surrendered himself to the prison authorities on February 19, 1975.

The defendant argues that his claim of inadequate identification was recognized by the trial Justice when, ruling on Dyer's motion for judgment of acquittal, he said: ". . . there has been no specific identification [of the defendant] in this case . . . ." The defendant seemingly overlooks the commentary by the presiding Justice in concluding the above quote: ". . . there is in the record, circumstantial evidence which strongly suggests the person committed pursuant to that judgment and commitment is the same Charles P. Dyer who is presently in court." With this observation we agree.

■ Because of the freedom accorded the defendant by his escort, Dyer now claims that he was not in such custody as could

make his abscondment an escape. This theory of abandonment of "custody" is untenable. Whatever leeway Dyer was permitted to enjoy on his furlough, he was nevertheless under legal restraint of his sentence as though he were within the walls of the Maine State Prison. *State v. Strollo*, Me., 370 A.2d 675 (1977); *Giles v. United States*, 157 F.2d 588 (9th Cir. 1946), *cert. denied* 331 U.S. 813, 67 S.Ct. 1197, 91 L.Ed. 1832 (1947). Though the security surveillance of the defendant was relaxed for a brief period to permit the prisoner to visit with his spouse in other than a totally controlled environment, Dyer's departure from furlough, limited as it was as to time and place, constituted escape from his place of confinement, Maine State Prison. *Read v. United States*, 361 F.2d 830 (10th Cir. 1966); *Tucker v. United States*, 251 F.2d 794 (9th Cir. 1958). *See Commonwealth v. Hughes*, 364 Mass. 426, 305 N.E.2d 117 (1973).

We have no hesitancy in saying there was sufficient evidence before the presiding Justice as a factfinder to warrant his determination beyond a reasonable doubt of the defendant's identification and guilt.

### III.

Concluding his claims of error, the defendant, in an effort to excuse and extenuate the circumstances of his abscondment, timely informed the presiding Justice that another facet of his defense would be that his escape was justified because, as a prisoner, he feared that his life was in jeopardy. In support of this contention, defendant's counsel sought leave of court to present "four witnesses plus possibly the defendant." Though he was thwarted in this endeavor when the trial Justice ruled, in advance of trial, that such evidence "would not be admitted," Dyer later proffered and was allowed to make an offer of proof. In essence Dyer's statement addressed to the record purported to show that while at Maine State Prison, he furnished prison officials with information concerning drugs at that institution, making "things . . . hot for him at the prison;" that a prison guard resigned when confronted with information given by Dyer to the prison warden about the guard's drug involvement at the prison; that Augustus Heald, a prison inmate, would testify that another inmate, Richard Picorelo "went at the defendant with a knife;" that defendant was the intended victim of a ten-pound barbell when it was "dropped" by an unknown inmate from the third floor of the prison.

 We do not perceive from the generalizations asserted by Dyer in his offer of proof that other safeguards were not available to him. The defendant makes no claim that he was denied access to the courts for a redress of his claims. Since he was under lawful confinement, he had no legal right to resort to self-help as a method to assert his claim with respect to conditions in the prison.

> When the Legislature conditioned the crime of escape upon a lawful detention, it did not intend to thwart the legitimate enforcement of criminal laws by so-called check-right of self-judgment and self-help. It proceeded on the theory that all should yield obedience to lawful authority. *Hamner v. State*, Me., 223 A.2d 532, 535 (1966).

The prison escape was not justified upon the defendant's claim that he acted under impending threats of physical harm.[4] As evidenced by his offer of proof, Dyer enjoyed established lines of communication with prison authorities. His fears, therefore, could have been averted by reporting the claimed threats and the names of those

---

4. 17–A M.R.S.A. § 755(2) (effective May 1, 1976) provides as follows:

 2. In the case of escape from arrest, it is a defense that the arresting officer acted unlawfully in making the arrest. In all other cases, it is no defense that grounds existed for release from custody that could have been raised in a legal proceeding.

The comment to the section points out that § 755(2) is a reflection of a legislative policy of discouraging self-help when a prisoner deems his custody to be illegal. In *Hamner, supra* at 535, we recognized that the Legislature abjured the principle of self-help. We view the adoption of § 755(2) as a reaffirmation of this philosophy.

persons making the threats to the authorities in charge of the prison. *People v. Richards*, 269 Cal.App.2d 768, 75 Cal.Rptr. 597 (1969); *State v. King*, Mo., 372 S.W.2d 857 (1973). The judicial system, as well as the prison administration, has long been recognized as the normal channels for meritorious complaints relating to prison conditions. Dyer could have registered his claimed grievances via these accepted avenues of redress.

Dyer's claimed defense of justification by necessity was properly rejected by the presiding Justice.

The entry shall be

Appeal denied.

POMEROY, J., did not sit.

All Justices concurring.