EL PUEBLO DE PUERTO RICO, apelado, *v.* ÁUREO MORALES ROQUE, acusado y apelante.

*Número:* CR-82-28     *Resuelto:* 16 de febrero de 1983

*Neil Fleisher*, de la División de Apelaciones de la Sociedad para la Asistencia Legal, abogado del apelante; *Miguel Pagán, Procurador General Interino*, y *Lirio Bernal, Procuradora General Auxiliar*, abogados de El Pueblo.

EL JUEZ PRESIDENTE SEÑOR TRÍAS MONGE emitió la opinión del Tribunal.

El Ministerio Público acusó al apelante de violar el Art. 232 del Código Penal, 33 L.P.R.A. sec. 4428, referente al delito de fuga. Tras juicio por tribunal de derecho se le

declaró culpable y se le impuso una pena de dos a cuatro años de presidio. En apelación alega que erró el tribunal al declararlo culpable, "a pesar de que la defensa presentó prueba que demostró que la fuga del apelante obedecía a la intimidación y violencia de que fue objeto en la institución penal por parte de los confinados".

De la prueba surge que el apelante fue ingresado en el Presidio Estatal el 28 de agosto de 1973. Conforme la prueba de defensa, en el curso del año 1977 hubo disputas, motines y varias muertes. En redadas realizadas periódicamente se ocupaban muchas armas en la penitenciaría. En octubre de ese año, un recluso intentó asesinar al apelante. Al no lograr su propósito, prometió matarlo de todos modos. El apelante testificó que intentó comunicarse sin éxito con el alcaide y con otro funcionario de la institución para evitar otro incidente.

El 28 de diciembre de 1977, el apelante obtuvo permiso para comprar ropa en Río Piedras. Lo acompañó un guardia penal. El apelante se escapó. Se trasladó a Estados Unidos. Allí fue arrestado tres años más tarde. No hay indicación en la prueba de que el apelante efectuase esfuerzo alguno durante ese período para establecer contacto con las autoridades policiacas en Puerto Rico o Estados Unidos para entregarse o explicarles su problema.

La doctrina por muchos años en el Derecho penal norteamericano fue que la defensa relativa a condiciones carcelarias intolerables no constituía justificación para la comisión del delito de fuga. Se suponía que el recluso solicitase amparo de las autoridades correccionales o de las cortes. *People* v. *Whipple*, 279 P. 1008 (1929); *State* v. *Cahill*, 194 N.W. 191 (1923). Algunos tribunales aún se aferran a tal teoría. *State* v. *Dyer*, 371 A.2d 1086, 1090 (1977). Para el análisis de la evolución de la jurisprudencia en este campo, véanse: Comment, *Intolerable Conditions as a Defense to Prison Escapes*, 26 UCLA L. Rev. 1126 (1979); Note, *Escape from Cruel and Unusual Punishment: A Theory of Constitutional Necessity*, 59 B.U.L. Rev. 334 (1979).

■ Las defensas del estado de necesidad y de la intimidación, a veces incluidas en la de condiciones intolerables, se han utilizado para alterar la norma tradicional en varios sitios. Comment, *Intent, Duress, and Necessity in Escape Cases*, 68 Geo. L.J. 249 (1979); E. Arnolds y N. Garland, *The Defense of Necessity in Criminal Law: The Right to Choose the Lesser Evil*, 65 J. Crim. L. & C. 289 (1974); M. Gardner, *The Defense of Necessity and the Right to Escape from Prison—A Step towards Incarceration Free from Sexual Assault*, 49 S. Cal. L. Rev. 110 (1975); Note, *Duress and the Prison Escape: A New Use for an Old Defense*, 45 S. Cal. L. Rev. 1062 (1972).

El Código Penal de 1974 reconoce estas últimas dos defensas.

El Art. 23 (33 L.P.R.A. sec. 3096), define así la defensa del estado de necesidad:

> No incurre en responsabilidad el que para proteger cualquier derecho propio o ajeno de un peligro inminente, por él no provocado y de otra manera inevitable causa un daño en los bienes jurídicos de otro siempre que no haya desproporción entre el daño causado y el daño que se evita.
>
> Esta eximente no beneficiará a quien por razón de su cargo, oficio o actividad tiene la obligación de afrontar el riesgo y sus consecuencias.

El Art. 25 (33 L.P.R.A. sec. 3098), trata de la defensa de intimidación:

> No incurre en responsabilidad el que obra compelido por intimidación o violencia.
>
> a) Por la amenaza de un peligro grave e inminente siempre que exista racional proporcionalidad entre el daño causado y el amenazado; o
>
> b) Por una fuerza física irresistible.
>
> El concepto de violencia en esta sección comprende también el empleo de medios hipnóticos, sustancias narcóticas, deprimentes o estimulantes, u otros medios, o sustancias similares.

En los casos previstos en esta sección será responsable del hecho delictuoso el que haya compelido a realizarlo.

El delito de fuga se configura del modo siguiente en el Art. 232 del Código Penal, 33 L.P.R.A. sec. 4428:

Toda persona sometida legalmente a detención preventiva, a reclusión o a medida de seguridad de internación, que se fugare será sanciónada conforme a las siguientes penas. . . .

El apelante alega que la defensa de intimidación lo exime de responsabilidad en este caso.

■ Al igual que el estatuto federal correspondiente, 18 U.S.C. sec. 751(a), la disposición de nuestra ley referente al delito de fuga no alude al elemento de *mens rea*. Según ha apuntado el Tribunal Supremo de Estados Unidos, pocas zonas del Derecho penal están revestidas de tanta dificultad como la definición de la *mens rea* requerida para el caso de cualquier delito en particular. *United States* v. *Bailey*, 444 U.S. 394, 403 (1980). En *Bailey*, el Tribunal tuvo que enfrentarse a los problemas derivados del tratamiento en el Derecho común del concepto de "intención" y de las gradaciones de éste favorecidas en algunos escritos. *Bailey*, supra, págs. 403–404. W. LaFave y A. Scott, *Handbook on Criminal Law*, St. Paul, Minnesota, West Publishing Co., 1972, Sec. 28, pág. 194 *et seq.*; The American Law Institute, *Model Penal Code* (*Proposed Official Draft* 1962), Sec. 2.02. El Art. 14 de nuestro Código Penal, 33 L.P.R.A. sec. 3061, establece:

Nadie podrá ser sancionado por una acción u omisión que la ley provee como delito si la misma no se realiza con intención o negligencia criminal.

La intención o la negligencia se manifiestan [*sic*] por las circunstancias relacionadas con el delito, la capacidad mental y las manifestaciones y conducta de la persona.

Véase: *Galarza Soto* v. *E.L.A.*, 109 D.P.R. 179 (1979). El Art. 15 (33 L.P.R.A. sec. 3062), define más adelante lo que se entiende por "delito intencional". Véase: *Pueblo* v. *Colón*

*Soto,* 109 D.P.R. 545 (1980). El apelante en el caso de autos no cuestiona la intencionalidad de su acto. Es innecesario, en consecuencia, que nos pronunciemos en este caso sobre los problemas de *mens rea* discutidos en *Bailey,* ante, ni sobre su relación con métodos alternativos de análisis. Véase: Comment, *Intolerable Conditions,* supra, pág. 1155 *et seq.* Basta con examinar si la defensa de intimidación puede invocarse eficazmente en las circunstancias de este caso.

La decadencia de la doctrina de que el prisionero es "el esclavo del Estado", *Ruffin* v. *Commonwealth,* 62 Va. (21 Gratt.) 790, 796 (1871), se inició verdaderamente hace menos de diez años, con dos decisiones: *People* v. *Harmon,* 220 N.W.2d 212 (1974), confirmado en 232 N.W.2d 187 (1975); y *People* v. *Lovercamp,* 43 Cal. App. 3rd 823, 118 Cal. Rptr. 110 (1975). La defensa de intimidación se consideraba hasta entonces, por lo general, insuficiente en derecho, en casos de confinados amenazados de muerte. *People* v. *Richards,* 269 Cal. App. 2d 768, 773, 75 Cal. Rptr. 597, 602 (1969); *State* v. *Milum,* 516 P.2d 984, 986 (1973).

*Lovercamp,* ante, resolvió, en el contexto de amenazas de ataque sexual, que una defensa limitada de estado de necesidad, en ciertas circunstancias, podía estar disponible para justificar una fuga. Tenía, sin embargo, que cumplirse con cinco condiciones: 1) el prisionero tenía que enfrentarse a una amenaza específica de muerte, ataque sexual forzado o daño sustancial corporal en el futuro inmediato; 2) no había tiempo para quejarse a la autoridades o existía un historial de quejas inútiles; 3) no había tiempo u ocasión de acudir a los tribunales; 4) no había prueba del empleo de violencia contra el personal de la institución penal u otros terceros, y 5) el prisionero se presentaba a las autoridades debidas tan pronto estaba a salvo de la amenaza inmediata. *Harmon,* ante, no impuso estos requisitos como condición para que pudiese prosperar la defensa. *Harmon* resolvió simplemente que, excepto en los casos más claros, la cuestión de si el alegado peligro era inminente debía someterse al juzgador de

los hechos a la luz de las circunstancias existentes, entre las que se contaría la oportunidad del recluso de evitar el daño.

*Lovercamp*, ante, fue bien recibido inicialmente, aunque se criticaron algunas de sus normas. Note, *Availability of the Duress Defense in Prison Escapes*, 12 Wake Forest L. Rev. 1102 (1976); Comment, *Have the Prison Doors been Opened?—Duress and Necessity as Defenses to Prison Escapes*, 54 Chi.[-]Kent L. Rev. 913, 930–932 (1978). Pronto, sin embargo, varios tribunales consideraron que *Lovercamp* sentaba unas guías excesivamente restrictivas. Para un análisis de la jurisprudencia sobre el particular, véanse: Comment, *Intolerable Conditions*, supra, págs. 1139–1182; *Criminal Law—Escape—Affirmative Defenses*, 49 U. Cin. L. Rev. 655 (1980); *Esquibel* v. *State*, 576 P.2d 1129 (1978); *People* v. *Unger*, 362 N.E.2d 319, 323 (1977).

En *Bailey*, ante, el Tribunal Supremo de Estados Unidos omitió toda referencia a *Lovercamp*. Tanto la mayoría como la minoría en *Bailey* estuvieron de acuerdo en que las defensas de intimidación y estado de necesidad son invocables en casos de fuga si se cumple con los requisitos siguientes:

1. El evadido debe probar la inminencia de la amenaza.

2. Debe probar asimismo que su fuga era la única alternativa razonable disponible.

3. Debe justificar también la continuación de su estado de fuga.

Hubo una diferencia central entre la mayoría y la minoría. La mayoría resolvió que, antes de poder reclamar instrucciones al Jurado sobre las referidas defensas, el fugado tiene que demostrar que hizo un esfuerzo *bona fide* por entregarse o retornar a custodia tan pronto como la intimidación o el estado de necesidad perdió su fuerza coercitiva. La minoría entendió que le correspondía al Jurado determinar si las condiciones existentes justificaban la ausencia continuada del penado.

■ Resolvemos que la defensa de intimidación es invocable en Puerto Rico en casos de fuga bajo determinadas condiciones. Ya que el caso de autos se ventiló ante tribunal de derecho, es improcedente que nos pronunciemos aquí sobre el papel del Jurado en este tipo de situación. Basta con señalar que el apelante en esta causa no presentó prueba de ningún género para justificar la continuación de su estado de fuga por tres años, hasta el momento de su arresto. La defensa de intimidación se desploma en tales circunstancias.

*Se confirmará la sentencia apelada.*

El Juez Asociado Señor Rebollo López concurre en el resultado.